A. T. SCHULTZE, Respondent, v. Z. T. STEELE *et al.*, Appellants.

St. Louis Court of Appeals, March 9, 1897.

1. **Partnership, Prima Facie Evidence of:** EVIDENCE OF LOCAL CUSTOM. An account of sales with the printed headings furnished plaintiff by defendants' memorandum books handed him, and the signature to checks, signed "H. S. & Co.," were *prima facie* evidence that defendants were in fact partners, doing business under that firm name and style; and evidence of a local custom that such holding out was not so understood, but merely as an advertisement of business, could not bind plaintiff, or any one who had no knowledge or information of the existence of such custom.

2. **Partnership:** EVIDENCE: JURY QUESTION. Where there was evidence tending to prove the existence of a partnership between defendants, the issue was properly submitted to the jury, however strongly the evidence to the contrary may have preponderated.

3. ——: HOLDING OUT AS PARTNERS: ESTOPPEL. Where defendants held themselves out as partners, and plaintiff, believing they were such, gave them credit, they were estopped as against plaintiff to deny the partnership.

*Appeal from the St. Louis City Circuit Court.*—HON. PEMBROOK R. FLITCRAFT, Judge.

AFFIRMED.

*Campbell & Ryan* for appellants.

The testimony of plaintiff that he had made the shipments prior to the one in controversy on the faith and credit of Mr. Steele's connection with the firm, if there was evidence to justify a belief that such was the

case, was a question for the jury, and the court erred in permitting plaintiff to testify. *Dulaney v. Rogers*, 64 Mo. 201, 205; *Roth v. Calvin*, 32 Vt. 125, 133; *Bank v. Isham*, 48 *Id.* 590, 593; *Thompson v. Bank*, 111 U. S. 529, 540; 1 Thomp. on Trials, secs. 377, 378, 1239.

The court also erred in permitting plaintiff to state from what he got his impression as to who constituted the firm. That was a mere opinion as to the very fact in controversy. *Rimel v. Hayes*, 83 Mo. 200, 204, 205; 2 Tayl. on Ev. [8 Ed.], p. 1206.

Also in permitting plaintiff to say what he "thought" the connection of the defendants was as to being a firm. 2 Tayl. on Ev. [8 Ed.], 1206; 1 Thomp. on Trials, sec. 378; *Phares v. Barber*, 61 Ill. 271, 275.

The court erred in excluding offers to prove the usage of live stock commission merchants at the stock yards to print the names of their salesmen on their stock sales and memorandum books. 2 Greenl. Ev., p. 245, note pp. 245, 246; Brad. on Ev., 166, 167.

The court erred in admitting in evidence the printed circular issued after Hull's assignment. 1 Tayl. on Ev. [8 Ed.], p. 531, sec. 588; *Flanagan v. Champion*, 2 N. J. Eq. 51, 54.

The third instruction for plaintiff was erroneous in permitting a recovery against any or all of the defendants as partners of Hull, upon the acts, conduct, or declarations of any one of them. *Rimel v. Hayes, supra; Lindsay v. Guy*, 57 Wis. 200, 210; *Flanagan v. Champion, supra; Edwards v. Tracy*, 62 Pa. 374, 378; *Bishop v. Georgeson*, 60 Ill. 484, 486; 1 Lind. on Part. [2 Am. Ed.], star p. 85. It assumed the existence of the main fact in controversy—the existence of the firm, which is fatal to the instruction. *R'y v. Stock Yards*, 120 Mo. 541, 557.

The court erred in refusing the last instruction asked by defendants. *Marshall v. Schricker*, 63 Mo.

308, 311; *Woolner v. Levy*, 48 Mo. App. 469, 475; *Welard v. Gas Co.*, 47 *Id.* 1, 7; *Norton v. Higbee*, 38 *Id.* 467, 470; *Powell v. Powell*, 23 *Id.* 365, 373.

*Nagel & Kirby* for respondent.

The allegation of partnership could be proved in either of two ways—by showing actual partnership, or by showing an estoppel by holding out as to any or all defendants; and proof of holding out only would have been no variance. *Rippey v. Evans*, 22 Mo. 157, 158; *Lowe v. Electric Spring Co.*, 47 Mo. App. 426, 429.

The use by defendants, Zeb and Charles Steele, of the words "us," "our," etc., concerning the business of Hull, Steele & Co., in dealing with plaintiff, constituted a holding out of themselves as having some interest in that firm. *Rippey v. Evans, supra; Meyers v. Boyd*, 44 Mo. App. 378, 380; *Cottril v. Vanduzen*, 22 Vt. 511.

One who knowingly permits his name to be advertised as a partner, or to be used in the sign or printed matter of a business in such a way that others are misled thereby to believe him a partner, and to deal with the house upon that assumption, is liable to such persons as a partner, even though he actually has no interest in it. Pars. on Part. [4 Ed.], p. 106, sec. 94; *Waugh v. Carver*, 2 H. Blacks. 235; *Dowzelot v. Rawlings*, 58 Mo. 75, 76; *Poillon v. Secor*, 61 N. Y. 456. See, also, *Campbell v. Hood*, 6 Mo. 211; Pars. on Part. [4 Ed.], p. 106, sec. 96; *Peacock v. Peacock*, 2 Camp. 45, 46; *Meyers v. Boyd*, 44 Mo. App. 378, 380; *Henshaw v. Root*, 60 Ind. 220, 225; *Rimel v. Hayes*, 83 Mo. 200, 205, 206.

When there is sufficient evidence to make a *prima facie* case upon a point at issue, the question should go to the jury. *Wolff v. Campbell*, 110 Mo. 114, 120;

*Goddard-Peck Co. v. Berry*, 58 Mo. App. 665; *Benedict v. Davis*, 2 McLean (Ind.), 347, 351, 352.

Plaintiff's testimony was relevant to show whom he trusted, and that he was induced to give the credit by their acts of holding out. *Rimel v. Hayes, supra; Gates v. Watson*, 54 Mo. 585, 589.

The usage being local and of a particular class could not affect plaintiff, unless he had knowledge of it, and no proof of such knowledge was made or offered. *Brown v. Strimple*, 21 Mo. App. 338; *Hyde v. Book & News Co.*, 32 *Id.* 298, 301; Brad. on Ev. 168. See, also, *Wolff v. Campbell*, 110 Mo. 114, 119; *Southwestern F. Co. v. Stanard*, 44 *Id.*

Appellants can not complain of instructions in harmony with those asked by themselves. *Fenwick v. Bowling*, 50 Mo. App. 516; *Haniford v. City of Kansas*, 103 Mo. 172, 182.

The instructions must be construed together, and if when so construed there could in reason be no misconception of the law, there can be no reversal. *Spillman v. R'y*, 111 Mo. 555, 564; *McGrew v. R'y*, 109 *Id.* 582, 591; *Minter v. Hardware Co.*, 5 Mo. App. 177.

BLAND, P. J.—The petition is as follows: "Plaintiff for his cause of action states that defendants are, and at the times hereinafter mentioned were, copartners doing a live stock commission business in the city of St. Louis, Missouri, under the firm name of Hull, Steele & Co.

"That heretofore, to wit, on or about March —, 1893, plaintiff consigned and shipped to defendants, for sale on commission, four cattle and fifty hogs; that said cattle and hogs were received by defendants on March 9, 1893, and by them duly sold for the account of plaintiff for the gross sum of $920.18; that after allowing for certain credits on account of freight, ex-

penses, and commissions, amounting in all to $33.48, defendants were indebted to plaintiff for net proceeds of said sale in the sum of $886.70, payment of which plaintiff demanded of defendants on March 9, 1893; that thereupon defendants, as Hull, Steele & Co., drew their check, dated St. Louis, March 9, 1893, upon the Merchants' National Bank, St. Louis, in favor of plaintiff, and delivered same to him; that thereupon plaintiff indorsed said check and delivered same to the Bank of Washington, Missouri, which said bank thereupon indorsed and delivered said check to the Franklin Bank, St. Louis, Missouri; that said Franklin Bank thereupon, to wit, on March 13, 1893, caused said check to be presented to said Merchants' National Bank and demanded payment of same; that thereupon said Merchants' National Bank refused payment of said check, whereupon said Franklin Bank caused the same to be duly protested for nonpayment; that thereupon said check was returned to plaintiff and he was compelled to pay protest fees in the sum of $3.25; that defendants are still indebted to plaintiff in the sum of $886.70, no part of which has been paid.

"Wherefore plaintiff prays judgment against defendants for said sum of $886.70, protest fees and costs."

Z. T. Steele filed separate answer, denying generally the allegations of the petition. This answer was supplemented by Steele's affidavit, denying that he was ever at any time a partner in the firm of Hull, Steele & Company, or that he ever made or authorized anyone to make for him, under the name of Hull, Steele & Company, or otherwise, the check mentioned in plaintiff's petition. The answer of C. T. Steele was the same as that of Z. T. Steele. Defendants Hull and Wells made default. The cause was dismissed on trial as to Hull. Trial had by jury; verdict and judgment

for plaintiff, from which Z. T. and C. T. Steele have duly appealed to this court.

The plaintiff resided at Washington, Missouri, and was engaged in stock raising. In 1889, and for a few years thereafter, his brother, Otto Schultze, was in partnership with him in the farming and stock raising business. Early in the spring of 1889, one Hinckle recommended to plaintiff and his brother the firm of Hull, Steele & Company, and advised them to ship stock to them. In April of that year plaintiff and his brother made a shipment to this firm of a car load of stock. Otto accompanied this shipment to St. Louis, where he found that Z. T. Steele was the salesman for the cattle, and Wells of the hogs, consigned to the company; and that C. T. Steele was the bookkeeper of the concern. Hull, he did not meet. After the sale of his stock he was furnished with an account of the sales with the following heading: "E. B. Hull, Gen'l Mgr.; C. T. Steele, Bookkeeper; Z. T. Steele, Cattle Salesman; Chas. Wells, Hog Salesman;" and signed "Hull, Steele & Co., Office, Union Stock Yards, St. Louis, Mo." He also received a check for the net proceeds of the sale of his stock, signed by Hull, Steele & Company, which was handed to him at the office of the company. A pocket memorandum book was also handed to him when he received his check, with the following indorsements printed on the back: "E. B. Hull, Gen'l Mgr.; Z. T. Steele, Cattle Salesman; Chas. Wells, Hog Salesman; C. T. Steele, Bookkeeper; Hull, Steele & Co., Live Stock Commission Merchants, Office, Rooms 7 & 8, Union Stock Yards, St. Louis, Mo. Stock consigned to us will receive prompt attention." On the inside of this book and at the top of first page appeared the printed words: "Presented by Hull, Steele & Co., Union Stock Yards, St. Louis, Mo." In April, 1890, the Schultzes made another shipment

to Hull, Steele & Company. This shipment was also accompanied by Otto. At this time he found the same parties in charge. He received a like statement of sales, with same printed heading, and signed by Hull, Steele & Company. His check was signed by Hull, Steele & Company. Another memorandum book was presented to him at same office. This book was a duplicate of the first one. In December, 1890, another shipment was made by the Schultzes to Hull, Steele & Company, when a statement of sales similar in all respects to the two previous ones was furnished. A check was given, signed by Hull, Steele & Company and a memorandum book presented, a duplicate of the first. It does not appear which of the Schultzes made this shipment, but the account of each of the sales, the several checks, and the memorandum books were taken to Washington and there seen and examined by the plaintiff. After this shipment the plaintiff and his brother were no longer partners. In November, 1892, the plaintiff made a shipment on his own account to Hull, Steele & Company. After the sale of his stock was made he received an account of sales containing the same heading as the ones theretofore furnished himself and brother, and signed Hull, Steele & Company. A check was given signed by Hull, Steele & Company. He was also handed a memorandum book at the office of the company, similar in all respects to the former ones. In December, 1892, plaintiff made another shipment to Hull, Steele & Company, and again received statement of sales, check, and memorandum book, duplicates in all respects, except as to dates, amount of stock sales, of the former ones. The last shipment made by plaintiff, the one out of which this controversy arose, was in March, 1893, when he received a check for the net proceeds of sale, signed by Hull, Steele & Company. Plaintiff testified that in conversations had with C. T.

Steele, Z. T. Steele was mentioned as "our cattle sales-man," and in a conversation with Z. T. Steele, Wells was mentioned as "our hog salesman." That he understood and believed them all to be partners, and members of the firm of Hull, Steele & Company, and that he gave credit to the firm, to all the defendants, as he believed they were all members of the firm. The check he received for the shipment in March, 1893, was for $886.70, dated March 9, 1893, and was protested for nonpayment March 13, 1893. Hull failed in March, 1893, shortly after the date of the check made to plaintiff, and made an assignment for the benefit of his creditors. Plaintiff proved up his claim (sued on) before the assignee of Hull and had received ten per cent dividend from Hull's estate, after the suit was begun, but before the trial. The evidence leaves no doubt of the fact that all of the defendants were apprised of the printed headings to statements of sales given out to plaintiff and of the printed words on the memorandum books, with which he and his brother were from time to time furnished from the office of Hull, Steele & Company. These memorandum books were handed out by either of the defendants who might be at the office, and were evidently used for the purpose of advertising the business of Hull, Steele & Company. The sign over the office door was "Hull, Steele & Co." The following circular was sent out to the respondent after the failure of Hull:

"Z. T. Steele,                    J. A. Reneau,
    "Cattle Salesman,                Hog Salesman.
"Jno. H. Pollock.          -      C. T. Steele,
                                    Bookkeeper.
            "Z. T. Steele & Co.,
        "live stock commission merchants.
"Office, Rooms 7 and 8, Union Stock Yards.
                "St. Louis, Mo., March 14, 1893.

"Sir and Friend:—After compliments to you, etc., ere this reaches you, you will doubtless have heard of the change having been made in the style name of Hull, Steele & Co., which is no more, and the new one taken up of Z. T. Steele & Co., which will consist of the same salesmen as before in the cattle, hogs and sheep, and all stock consigned to the new firm of Z. T. Steele & Co., will receive prompt attention and prompt returns.    Thanking you for your past favors, we hope in the future to be able to do you good right along.

"Our cattle market continues to run along steady, and prices are good on all kinds of fat stock and cows and calves with light receipts and prospects good for the future end of the week."

Then follows a series of quotations upon stock of different kinds, and the circular is signed "Z. T. Steele & Co."

Afterward this additional circular was sent to respondent:
            - -: "Z. T. Steele & Co." :- -
        "live stock commission merchants.
"Rooms 7 and 8, Union Stock Yards,
                "St. Louis, Mo., March 21, 1893.
"Dear Sir:—
            "We sent you a notice of the failure of Mr. Hull, of Hull, Steele & Co., who has quit the business, and the firm from now on will go by the name of Z. T. Steele & Co., which is composed of the same sales-

men that always sold you stock heretofore, and we have ample means to do all our business. The failure of Mr. Hull does not affect the new firm, as all the men that compose the new firm were working for Mr. Hull on a salary. Having sold your stock in the past, we hope to continue to do so in the future. And any time you have stock to ship to us it shall receive our personal attention, and shall endeavor to get the highest price for it. Our cattle market is very good; not near enough butcher cattle to supply the demands. Top hogs 7 1-2 and market closes steady. Hoping to receive your consignments in the future as in the past, we remain,

"Respectfully,

"Z. T. Steele & Co."

The defendants all testified that the firm of Hull, Steele & Company was composed of E. B. Hull, and that neither of the Steeles nor Wells were at any time members of the firm, but were employees working for Hull upon stipulated salaries. They were corroborated as to this fact, by other witnesses, and it may be said that the evidence preponderated in their favor as to this fact, but it was not all on one side. The account of sales with the printed headings, furnished by them to the plaintiff, the memorandum books handed him by the defendants, the signature to checks, signed "Hull, Steele & Co." admit of no other construction than that these defendants were partners, doing business under the firm name and style of "Hull, Steele & Co." and are at least *prima facie* evidence that they were in fact partners. It follows that there was no error in the refusal of defendants instructions, that there was no partnership existing between E. B. Hull and the defendants Z. T. and C. T. Steele. Defendants complain of the action of the court in permitting the plaintiff to testify to whom credit was given when he made his several

*PARTNERSHIP, prima facie evidence of: evidence of local custom.*

shipments.   Under the ruling in the case of *Rimel v.
Hayes*, 83 Mo. 200, and *Gates v. Watson*, 54 Mo. 585,
this evidence was admissible.   This testimony was but
the statement of a fact necessarily inferable from his
testimony already in, that he understood he was deal-
ing with a copartnership, whose members were composed
of Hull, the two Steeles and Wells, and could not have
prejudiced the defendants even if inadmissible.   In or-
der to do away with the probative force of the printed
headings on the account of sales made by Hull, Steele
& Company defendants offered to prove that there was
a local custom among live stock commission merchants
in St. Louis, to designate their stock salesmen, as were
the Steeles, by Hull, Steele & Company, by its accounts
of sales, etc., introduced in evidence in this case.   No
offer was made to affect the plaintiff with notice of the
alleged local custom.

There was no uncertainty as to the amount due plain-
tiff on the account of the sale made by Hull, Steele &
Company of his stock.   No uncertainty as to the con-
tract to pay the net proceeds of such sale, as evidenced
by the check, signed by Hull, Steele & Company.   The
sole question was whether the Steeles were liable as ac-
tual partners or liable by reason of having held them-
selves out as such partners.   Evidence that in St. Louis
such a holding out among live stock commission mer-
chants was not understood as a holding out, but as a
mere advertisement of a business, if it could be upheld
in any case for any purpose, could not bind any one
who had no knowledge or information of the existence
of the local custom.   *Southwest, etc., Co. v. Stanard*,
44 Mo. 71.

Exhibit 2, coming from the office of the new firm
of Z. T. Steele & Company, was in the nature of an ad-
mission that the Steeles had been partners of Hull,
Steele & Company, and was for this reason admissible.

The instructions given on the part of plaintiff were as follows:

"I.   The court instructs the jury that the plaintiff in this case had dismissed the suit as against Edward B. Hull, having already recovered a judgment against him by reason of the allowance of plaintiff's claim by the assignee of Edward B. Hull; that Edward B. Hull is no longer in this case as a defendant, and therefore no judgment can be rendered in this case against him. But the court further instructs the jury that the fact that plaintiff proved his claim before the assignee of Edward B. Hull, upon the claims here sued on or upon the check of Hull, Steele & Company, does not preclude plaintiff from recovering in this action against the other original defendants, or against any of them whom the jury may find, if any they do so find from the evidence and under the instructions, to be liable to plaintiff."

"II.   The court instructs the jury that if they believe from the evidence that at the time plaintiff's stock was sold and the check was given, all or any of the defendants were actually partners of and doing business with E. B. Hull as Hull, Steele & Company, then your finding should be for the plaintiff against those defendants whom you so find to have been partners, and for such amount as you find to be still due from Hull, Steele & Company, to plaintiff on the claim sued upon, with six per cent interest from the eighteenth day of March, 1893, the date when this suit was commenced."

"III.   The court further instructs you that even though you may find from the evidence that at the time of the sale of plaintiff's cattle and hogs neither of the defendants were actually partners of Edward B. Hull, nevertheless, if you further find and believe from the evidence that the defendants, or either of them, by

their conduct, acts, or declarations held themselves out to plaintiff as the partners of said Hull, Steele & Company, and by such acts, conduct, or declarations induced plaintiff to believe and plaintiff did believe that said defendants or either of them were partners of said Edward B. Hull at the time plaintiff made the shipment and sale of the cattle and hogs mentioned in plaintiff's petition, and by reason of which belief he gave credit to said firm, then such defendants are liable to this plaintiff as partners of Edward B. Hull, upon any indebtedness which you may find to be due from Hull, Steele & Company, to plaintiff under the cause of action sued on.''

The court on its own motion gave the following instructions: ''I. The court instructs the jury that if they find for the plaintiff, the amount of the verdict should be such sum as they find from the evidence to be the balance due for the proceeds of the sale of the stock in question, to wit, $886.70, less the sum of $88. 99 received by plaintiff on account on August 10, 1893, from the assigned estate of Edward B. Hull and with six per cent interest on said balance from March 18, 1893, the date when this suit was filed, to this date.''

''II. The court instructs the jury that unless they believe from the evidence that prior to the shipment of his cattle and hogs the plaintiff honestly believed and had good reason based on the conduct, acts or statements of the Steeles and known to the plaintiff, to believe that they were partners of E. B. Hull, doing business as Hull, Steele & Company, and unless you further believe from the evidence that plaintiff in making his shipment was induced to do so by such a belief, and that he relied upon and trusted these defendants, the Steeles, as being members of such a firm, then your verdict must be for said defendants Zeb and Charles Steele.''

"III. The court instructs you that the burden of proof is upon the plaintiff in this case to prove his case by a preponderance of evidence, but by the phrase 'preponderance of evidence' you are not to understand that the number of witnesses who may testify to any fact affirmatively or negatively, will constitute a preponderance of evidence. But in ascertaining the preponderance of evidence as to any fact, you are to look to all the circumstances surrounding the fact in issue as shown by the evidence, consider the credibility of the witnesses, their bias or prejudice, and all other things which tend to increase or diminish the value of their testimony."

The court gave the following instruction asked by Z. T. and C. T. Steele:

"1. If the jury believe from the evidence that prior to January, 1887, the defendant Hull was in the live stock commission business in partnership with R. A. Steele, and that in the month of January, 1887, said R. A. Steele was killed, and that thereafter Hull continued the business and carried it on alone, doing business under the style of Hull, Steele & Company, and was so doing business up to March 13, 1893, and you believe from the evidence that defendants Zeb Steele and C. T. Steele were employed by said Hull as cattle salesman and bookkeeper respectively, and were not his partners and never held themselves out as such, then your verdict must be for those defendants."

The first instruction instead of tending to confuse the jury, as claimed by appellants, cleared the case of any confusion that might have arisen from the fact that Hull was named as one of the parties defendant, and placed before them the only real parties, making a defense. The second instruction based the right of recovery upon the existence of a partnership of all the defendants *inter*

PARTNERSHIP:
evidence: jury
question.

*se.* There was evidence, as we have seen, tending to prove this issue, and it was proper to submit the issue to the jury, however strongly the evidence to the contrary may have preponderated. It was for the jury to say whether the printed advertisements of a partner-. ship sent out *"ante litem motam,"* were the expressions of the truth or the sworn testimony of the defendants, given *post litem motam.* There was no temptation to exceed or fall short of the truth, when the advertisements were given out, and they were entitled to great weight. *Wolff v. Campbell,* 110 Mo. 114; *Goddard, Peck & Co. v. Berry,* 58 Mo. App. 665.

The third instruction, in view of all the evidence in the case, is not open to the criticism that it authorizes a recovery against all or any of the defend-ants, upon the statements and declara-tions of any one of the others. The sub-stantial evidence of a holding out in this case, was by the printed headings, on the accounts of sales and memorandum books furnished the plaintiff by the defendants, handed to him not by one of the defend-ants, but by any one of them who might be present at the office. It is inconceivable that the printed headings upon the blanks used by defendants, in making out accounts of sales to the plaintiff, and presumably to all other of their customers, and these memorandum books handed to plaintiff, and doubtless to all other customers, as a medium of advertising their business, were unknown to any one of these defendants. By these they held themselves out to plaintiff as partners. Believing them partners as he swears, and as he had a right to believe, he gave them credit as members of the firm of Hull, Steele & Company, and they should be, as against this plaintiff, estopped to deny their partnership. It was eminently proper, in view of the fact that the defendants had denied under oath, and by

HOLDING out as partners; estoppel.

their testimony, the existence of an actual partnership, to give instruction number 3 placing the right of plaintiff to recover upon the ground of estoppel. *Bissel v. Warde*, 129 Mo. 439; *Campbell v. Hood*, 6 Mo. 211. The measure of plaintiff's damage is properly stated by instruction given by the court on its own motion. The other instructions given by the court on the part of defendant are, *first*, a counter instruction to instruction number 2 given for plaintiff, and, *second*, as to the burden of proof. These covered all the law in the case, and covered all the issues to be found by the jury. Other instructions would have been superfluous, however correct they might have been as propositions of law. Those asked by defendants were substantially given by other instructions, hence there was no error in refusing them.

Perceiving 'no prejudicial error in the record the judgment is affirmed. All concur.