BART SHORT, Appellant, v. HENRY THOMAS, Respondent.

Springfield Court of Appeals, February 10, 1914.

1. PROMISSORY NO ES: Mistake in Execution: Review of Evidence. In an action on a note evidence reviewed and *held* to sustain the finding that the note was made in excess of defendant's indebtedness by mistake of the parties.

2. ———: ———: Evidence Permissible. No error was committed in permitting defendant to testify, in an action on a note given by a firm for a firm debt, that he owed only one-third of the debt, where mistake in the amount of the note was the defense.

3. ———: Evidence: Confidential Communications: What Are Not. Testimony of the widow of one of the comakers of a firm note as to statements and conversations regarding same made by her deceased husband in the presence of the payee and plaintiff, who held same for collection, *held* competent.

4. HUSBAND AND WIFE: Witnesses in Actions Between Third Parties: Competency. In an action between strangers, in which the husband is neither a party nor interested in the outcome, the wife is competent to testify to conversations had between her husband and third parties. (Citing Sec. 6359, R. S. 1909.)

5. BILLS AND NOTES: Death of one Comaker: Evidence of Other Comaker not Excluded. Surviving comakers of a note are

not disqualified as witnesses by Sec. 6354, R. S. 1909, because of the death of a comaker.

6. **PARTNERSHIP: In Fact: By Estoppel.** Though one may not in fact be a partner, he may so hold himself out as to be bound as such to those dealing with the supposed firm.

7. **BILLS AND NOTES: Mistake as a Defense: Reformation.** Mistake may be invoked in a defense which seeks to reform a written instrument that does not express the agreement between the parties.

8. **PROMISSORY NOTE: Mistake as a Defense: Reformation not Necessary.** In an action on a promissory note it is not necessary to pray for a reformation because of mistake where such mistake is set up merely as a defense, and a reformation is not necessary to place the defendant *in statu quo*.

9. **PROMISSORY NOTES: Mistake in Execution: Failure to Apprise Payee: Laches.** The fact that defendant failed, through several years, to inform the payee that the note sued on had been made out for too large a sum did not deprive him of that defense in an action thereon.

10. **ESTOPPEL: What Necessary to Invoke.** To invoke the doctrine of estoppel some gross negligence or fraudulent intent must be shown against the party sought to be estopped.

11. **RELIEF IN EQUITY: Barred only by Limitation.** Lapse of time short of that fixed by the statute of limitations will not bar equitable relief where the right is clear and there are no countervailing circumstances.

Appeal from Barry County Circuit Court.—*Hon. Carr McNatt,* Judge.

AFFIRMED.

*J. N. Guthrie* and *I. V. McPherson,* for appellant.

(1) The Court erred in permitting defendant to testify that he owed only one-third of the original note, while the note itself showed the defendant was liable for all of it; in permitting defendant to testify that the payee had said that Henry Short had paid all he owed on the note; in permitting Gillie Short, the wife of one of the makers of the note sued on, to tes-

178 Mo. App. 26

tify to statements and conversations of her dead husband; permitting the defendant to testify concerning acts, statements and declarations of Henry Short, his deceased partner and comaker of the note sued on. Sec. 6359, R. S. 1909; Sec. 6354, R. S. 1909; In Re Bishchoff v. John Stumpf, 10 Mo. App. 474; Sec. 6354, R. S. 1909; Butts v. Phelps, 79 Mo. 302; Charlotte Oil and Fertilizer v. Rippy, 32 S. E. 980; Kellogg v. Malin, 62 Mo. 432; Sidney v. Stock Co., 163 Mo. 386; Goddard v. Williamson's, Admr., 72 Mo. 133; Wendover v. Baker, 121 Mo. 273; Johnson v. Burks, 103 Mo. App. 230; Chapman v. Daugherty, 87 Mo. 619; Stanton v. Ryan, 41 Mo. 510; Moore v. Wingate, 53 Mo. 409; Holman v. Bachus, 73 Mo. 49; McFadden v. Catron, 120 Mo. 252; Shanklin v. McCrackin, 140 Mo. 356. (2) Henry Thomas was incompetent to testify because the facts he testified about were transactions to which Henry Short, his deceased partner, had been a party, and in which Henry Short was interested; Henry Short was not a party to this suit—was not represented in court, and, being dead, the statute disqualified defendant as a witness. The witness Gillie Short, being the wife of Henry Short, deceased, was likewise incompetent under the statute. In Re Bischoff v. John Stumpf, 10 Mo. App. 474; Butts v. Phelps, 79 Mo. 302; Sidway v. Land & L. Co., 163 Mo. 386; Chapman v. Daugherty, 87 Mo. 619; Stanton v. Ryan, 41 Mo. 510; Dawdy v. Dawdy, 118 Mo. App. 336. (3) The demurrer should have been sustained because it appeared upon the face of the answer that the mistake complained of occurred in a settlement had between the defendant, the payee in the note and Henry Short, the last of which persons is not a party to this suit. All the persons to a settlement must be before the court before a settlement made by them can be overturned for a mistake. State ex rel. v. Sanderson, Collector, 54 Mo. 205; First Nat'l Bank v. Coal Co., 86 Mo. 137, 8 Cyc., 533. (4) The defendant's negligence and laches are so apparent

upon the face of his answer as entitles plaintiff to have
his demurrer sustained. 8 Cyc. 533; Meeter v. Rail-
road, 105 Mo. 320; Murdock v. Lewis, 26 Mo. App. 234;
Hatcher v. Hatcher, 139 Mo. 614; Schrodski v. All-
bright, 93 Mo. 42; Cannon v. Sanford, 20 Mo. App.
590. (5) The proof, to entitle the defendant to relief,
because of mistake must show not only that a mistake
was made, but it must have been a mutual mistake.
There is no pretense here that the evidence shows a
mutual mistake, if it shows any at all. 16 Cyc., page
68, 70; Leitensdorfer v. Delphy, 15 Mo. 160; State ex
rel., etc., to use of Frank v. Adm'r of John Frank, 51
Mo. 98; Judson v. Mullinax, 145 Mo. 630; Bolt & Nut
Mf'g Co. v. St. Louis Car Co., 210 Mo. 729.

*Mayhew, Sater & Gardner* and *J. S. Davis,* for re-
spondent.

(1) Defendant's testimony as to what F. S. Short
said about Henry Short having paid his part was
proper as an admission by F. S. Short that payment
had been made and as a contradiction to his testimony
at the trial. Wigmore on Evidence, Vol. II p. 1216,
sec. 1048; Encyc. of Evidence vol. 9, page 728. (2)
The evidence of Mrs. Gillie Short was properly ad-
mitted. She was testifying to a conversation between
her husband, Henry Short, and F. S. Short, in her pres-
ence. This as not a conversation between herself and
husband, but if it had been it was had in the presence
of F. S. Short, which fact eliminates the confidential
feature of their conversation. Long v. Martin, 152
Mo. 674; State v. Wolley, 215 Mo. 684; Reed v. Reed,
101 Mo. App. 178; Lynn v. Hockaday, 162 Mo. 122.
(3) The note or contract in suit is between F. S. Short
on the one side and H. F. Short and Henry Thomas on
the other. Defendant and H. F. Short are joint obli-
gors on this note, contracting, not with or between
themselves, but jointly with the payee, F. S. Short.
Under such circumstances the death of one joint maker

does not disqualify the other joint maker or the payee from testifying in a suit on the note. Ins. Co. v. Broyles, 78 Mo. App. 368; Vandergrif v. Swinney, 158 Mo. 532; Banking Co. v. Loomis, 140 App. 74; Wallace v. Jeeks, 25 Mo. App. 313; Nugent v. Curran, 77 Mo. 325; Fulkerson v. Thornton, 68 Mo. 468. (4) A mere lapse of time short of the statutory period of limitations, will not bar a claim to equitable relief, when the right is clear and there are no countervailing circumstances. Cantwell v. Crawley, 188 Mo. 57; Lyndell Real Estate Co. v. Lindell, 142 Mo. 79; Dobuns v. Rice, 22 Mo. App. 457; Chance v. Jennings, 159 Mo. 558; Stephenson v. Smith, 189 Mo. 467; Spurlock v. Sprouse, 72 Mo. 509; Bradshaw v. Yates, 67 Mo. 232; Blackford v. Construction Co., 132 App. 163; Kelley v. Hurt, 61 Mo. 463; Dunn v. Miller, 96 Mo. 324. (5) In an action on contract where the defense pleaded is that there was a mistake in that the written contract did not state the direct agreement, the court need not actually reform the instrument, but may give the defendant relief as though the contract stood corrected. Ins. Co. v. Zinc & Lead Smelting Co., 154 S. W. 830 (Mo. Apr. 16, 1913). (6) If the written contract is untrue and misstates the real agreement as made and understood by both parties in some essential particulars, then the contract is a mistaken one and the mistake may be corrected in equity. Dolvin v. American Harrow Co., 28 L. R. A. (N. S. Ga.), 894 (note); Bottsford v. McLean, 45 Barb. 478; Whitehead v. Brown, 18 Ala. 682; Seals v. Stocks, 100 Ga. 13, 30 S. E. 278; Hileman v. Wright, 9 Ind. 126. (7) In an equity case, an appellate court ought not to disturb the finding of the circuit court on the question of facts, unless it is entirely satisfied that the result reached is against the preponderance of the evidence. Barlow v. Elliott, 56 Mo. App. 378; Greditzer v. Continental Ins. Co., 91 Mo. App. 540; Taylor v. Cayce, 97 Mo. 242; Rawlins v. Rawlins, 102 Mo. 563; Owen v. Owen, 48 Mo. App. 208;

Kinzer v. Kinzer, 130 Mo. 126; Sayer v. Devore, 99 Mo 437.

FARRINGTON, J.—Suit on note. Judgment for defendant. Appeal brought to this court by the plaintiff.

In January, 1913, the appellant instituted this suit against the respondent, the petition being in the usual form followed in such actions, based upon the following promissory note:

"Aurora, Mo., Dec. 30, 1907.
"$401.01.

"For value received, six months after date, I, or we, promise to pay to the order of F. S. Short, at the Bank of Aurora, four hundred one and one-hundredths dollars. Negotiable and payable without defalcation or discount and with interest from date at the rate of eight per cent per annum, payable annually, and if the interest be not paid annually to become as principal and bear interest at the same rate.

"HENRY THOMAS
"H. F. SHORT."

The following credits appear indorsed on the back of said note: "April 8, 1909, received by cash, $13.95; October 20, 1910, received by check, $75; December 7, 1910, received by cash, $25; May 26, 1911, received $50; January 16, 1912, received $100."

The following assignment is also indorsed on the back of said note: "Dec. 27, 1912. I assign the within
Mark
note to Bart Short for collection. F. S. (X) Short. Witness to mark: J. N. Guthrie, S. E. Phillips."

One of the signers of the note, H. F. Short, is referred to all through the record as Henry Short.

The answer admits the execution of the note, but sets up as a defense a mistake made by the parties in calculating the amount which was owing from defendant to plaintiff's assignor on an indebtedness which

existed prior to the execution of the note. The answer, in part, is as follows: (Formal parts omitted)

"Comes now the defendant and for his answer to the plaintiff's petition herein, admits that he signed the note sued on by the plaintiff, and that the payments thereon in plaintiff's petition set out were made by the defendant as therein designated, and further answering defendant says, that said note was given to F. S. Short, upon a settlement and accounting between defendant and the said F. S. Short and was intended to be made for the amount which defendant then owed the said F. S. Short; that the defendant at the time of executing said note, owed the said F. S. Short a one-third part of a promissory note executed on the first day of November, 1901, to said F. S. Short, for the sum of $765, bearing eight per cent interest from date thereof, up to April 15, 1905, at which time a payment of $169.24 had been made by defendant on his part of said note and credited thereon, and that the balance remaining due after such payment had borne eight per cent compound interest until December 30, 1907, the date of the execution of the note sued on herein; that the note sued on was intended to be executed for and to take the place of the amount due on defendant's one-third part of the $765, which was at the time the sum of $201.97, but defendant says that in figuring up the amount of defendant's indebtedness on the $765 note, there was a mistake made by the parties thereto, and by reason of such mistake, it was ascertained by said parties that defendant owed said F. S. Short, as his part of said $765 note, the sum of $401.01, instead of the sum of $201.97 aforesaid, and that the note now in suit was thereupon by mistake of the said parties given and received for the erroneous sum of $401.01, instead of $201.97, which was justly due said F. S. Short. And defendant says that the said note of $401.01 was and is without consideration for the sum of $199.04, being the excess over and above

what was justly due from defendant to said F. S. Short
in said settlement.'' The answer also set up the fact
that defendant had paid at the time this suit was in-
stituted more than the amount that was actually owing
to the plaintiff. It also avers that the plaintiff, Bart
Short, was the holder of the note by assignment with-
out consideration and had knowledge at the time of
the assignment of the claim of the alleged defenses.
A decree is asked for cancellation of the note and for
judgment.

The reply was a general denial and a plea admit-
ting the execution of the $765 note by the firm of F. S.
Short and Henry Short and Henry Thomas, each own-
ing a one-third interest in the partnership, and a
further plea that Henry Short and Henry Thomas
owed the two-thirds of the $765 note, but denying that
the credit of April 15, 1905, of $169.24 was money
that was paid by the defendant, alleging that it was
paid by Henry Short; also, that on December 30, 1907,
a settlement took place resulting in the execution and
delivery of the note in suit to F. S. Short, and that
on the execution of this instrument, the original note
of $765 was cancelled and delivered to Henry Short,
the other partner. It is also alleged that Henry Short
is dead, having died some time after the settlement of
December 30, 1907; that Henry Short and Henry
Thomas figured the amount due and that if any mis-
take was made as to the amount, it was a mistake be-
tween themselves; that the defendant failed to make
known the mistake to F. S. Short during the lifetime
of Henry Short but repeatedly made statements which
acknowledged the amount of the note as correct, and
that by reason of such statements and failure to give
notice to the said F. S. Short he made no claim on
Henry Short during his lifetime or against his estate,
and that owing to the defendant's acquiescence and
conduct with reference to said note in suit he is now
estopped from making the defense set up.

It is undisputed that on November 1, 1901, F. S. Short, Henry Thomas, and Henry Short who died in March 1909, were copartners in the mercantile business at Jenkins, Mo., doing business under the firm name of Short & Thomas. At that time F. S. Short was an old man, and at the time of the trial was ninety-four years of age. He resided with his son and partner, Henry Short. On November 1, 1901, F. S. Short individually advanced to the firm of Short & Thomas $765 which was used in the business and which was evidenced by the note of $765 signed "Short & Thomas." Soon after this note was executed, the respondent bought the interests of the Shorts and continued the business himself, executing to them individually his two notes of March 3, 1902, for $116.09 each.

Immediately thereafter, a mercantile business started up across the street under the firm name, "Short & Son." The literature and advertisements and bank checks and the bank account of that concern bore the name "Short & Son," and goods were shipped and billed to them as "Short & Son." F. S. Short was in and about the store attending to some of the business, and at that time lived with his son. F. S. Short denies that he was an actual partner in this firm of Short & Son, but admits it was conducted under that name and that he was in the store some of the time. A number of witnesses testified that it was generally understood that the firm of "Short & Son" was composed of F. S. Short and his son, Henry.

It is undisputed that on April 15, 1905, the respondent sold his store to "Short & Son" and that an invoice was taken of the stock which is identified as being the original invoice made in the handwriting of Henry Short, deceased, which invoice shows that the amount coming to respondent from such sale was $304.67. It will be noted that the date of the sale from respondent to "Short & Son" corresponds with the date of the credit of $169.24 on the $765 note.

The testimony of F. S. Short is that he had nothing whatever to do with the purchase of the stock of goods from the respondent, but that the purchaser, "Short & Son," was his son Henry, who, according to his testimony, was the sole owner of the business conducted under the name, "Short & Son." He denied being present at the making of the trade and taking the invoice or while the negotiations for the purchase were carried on. In this, he is contradicted by the respondent and by Gillie Short, the wife of Henry Short, deceased. It may be well to add at this place that plaintiff in this case is the son of F. S. Short, a brother of Henry Short,. and a brother-in-law of the respondent, Henry Thomas.

The respondent, corroborated by Gillie Short, testifies that at the time the trade was made on April 15, 1905, there was present during the negotiations, Henry Short, F. S. Short, Gillie Short, and respondent, and that F. S. Short took an active part in the negotiations and insisted that the credit of $169.24 be placed on the $765 note, and that F. S. Short said "Short & Son" would not purchase from respondent unless such an amount as would be coming to respondent be credited on his $765 note. It will be remembered that at that time respondent owed (1) a note of $116.09, (2) one-third of the $765 note held by F. S. Short, and (3) a note for $116.09 payable to and held by Henry Short. Respondent testified that he was anxious to have the balance coming to him credited on his $116.09 note held by F. S. Short, but that owing to the fact that respondent's father and brother were on his note as his sureties, F. S. Short refused to trade for the goods unless the balance coming to respondent be credited on his, F. S. Short's, note of $765. As stated before, there is a conflict in the evidence as to this because F. S. Short said he did not remember any such arrangement or conversation.

The question on which this case turned was as to who was entitled to the credit of $169.24 indorsed on the $765 note—respondent, corroborated by Gillie Short, claiming that the credit was paid by him, and the appellant, relying upon the testimony of F. S. Short, the owner of the note, claiming that this $169.24 was paid by Henry Short on his own account.

If the evidence in behalf of respondent is competent, which will be discussed later, we believe the finding of the learned trial judge is sustained. Not only does this evidence support that finding, but the testimony of the respondent as to the invoice and the way in which the goods were paid for by "Short & Son" corroborates his theory of the case. The invoice referred to, in Henry Short's handwriting, shows a balance due respondent, at the date of the credit of $169.24 appearing on the $765 note, of $304.67. Respondent explains how this amount was paid, to-wit, by taking out of this $304.67 the amount of the $116.09 note due Henry Short with interest, which he testifies amounted to $145.43 on April 15, 1905. This amount, taken from the balance of the invoice, would leave $159.24, and by adding the $10 credit for a telephone bought from respondent by F. S. Short and admitted by the latter to be correct, makes the exact amount of the credit—$169.24.

One of the difficulties in this case arises by reason of the fact that the amount of the note sued on—$401.01—cannot be arrived at on the theory advanced by either party in explaining the settlement. If it be true that the credit of $169.24 belonging to Henry Short and not to respondent, then on December 30, 1907, the date of the settlement and of the note sued on, the amount that would be coming to F. S. Short from the respondent would be $410.01, which is $9 more than the amount of the note.

The respondent attempts to explain by saying that on December 30, 1907, he and Henry Short and F. S.

Short undertook to settle the balance of the old $765 note and that he was told by F. S. Short at the time of that settlement that Henry Short had paid his full amount due and that the only unpaid amount of the $765 note was that which he, the respondent, owed, and that in figuring up the amount of respondent's liability the three interested parties being present and looking over Henry's figures agreed that $401.01 was the amount due, and that it was arrived at by calculating the interest on the $765 note up to April 15, 1905, and dividing that amount by two and then subtracting the $169.24, and on that balance figuring the amount due down to December 30, 1907, at $401.01. This, however, does not figure out for that amount, as on this theory respondent would have been indebted to F. S. Short on this note in the sum of $406.96. The respondent claims that the mistake was made by them losing sight of the fact that the note was a partnership obligation owing F. S. Short, the latter, being one of the partners, therefore owing one-third of it, and that the balance was divided by two instead of by three. In other words, his defense was that on December 30, 1907, when all three of the members of the original firm of Short & Thomas were present figuring up the amount due from respondent on this note, they ascertained the balance due to April 15, 1905, the date on which the sale took place and the date on which the credit appears on the note, and the amount that would be coming to respondent from the sale less the note of $116.09 with interest payable to Henry Short; that they gave him credit for this $169.24 but made the error in dividing the balance due on April 15, 1905, into two parts instead of three. If respondent's testimony, corroborated by that of Gillie Short, and the circumstances hereinbefore detailed, is to be believed —and the trial court evidently did believe it—his explanation of the way in which they arrived at the amount agreed upon as due on December 30, 1907, is

$2.04 nearer the amount of the actual note made than the amount arrived at upon the theory advanced by the appellant. This discrepancy, however, might be easily accounted for owing to the fact that in figuring the compound interest covering a number of years and giving the credit (indeed, on either theory) there might have been such an error. The trial judge realized that some mistake had been made, and as stated before, the entire controversy revolved about the question concerning who was entitled to the credit of $169.24. The evidence clearly shows that when "Short & Son" bought respondent's goods there was a balance coming to him of $159.24. "Short & Son," as claimed by F. S. Short, was in fact, Henry Short, who was liable with respondent on the $765 note. The natural thing that Henry Short would do when owing $159.24 for the stock of goods would be to require that it be paid on the $765 note on which both were liable. The fact that the date on which he bought the goods and the date on which the credit is made on the note is the same, and the credit, plus the $10 telephone item, makes the amounts the same, is evidence strongly tending to support respondent's theory. So we say that if the evidence introduced by the respondent was competent, the trial judge was justified in his judgment, and his finding on this question is entitled to considerable deference in this court.

We will now discuss the alleged errors assigned by the appellant. The first goes to the competency of respondent's testimony and the action of the court in permitting him to testify that he owed only one-third of the original note. This point is not well taken for the reason that the note shows on its face that it was signed by the firm of Short & Thomas, and the reply of the appellant and the testimony of F. S. Short shows beyond cavil that the whole of the note of December 30, 1907, had been paid except respondent's

part and that he was responsible for only one-third of the original debt.

There was objection made to the testimony of Gillie Short, widow of Henry Short, because she was testifying to statements and conversations of her dead husband, a comaker of the note. This objection is without merit for the reason that the conversations she testified to were had in the presence of F. S. Short and the respondent, which would prevent them being barred on the theory that they were confidential communications. The pleadings and the testimony of witnesses show that Henry Short had paid his part of this debt; besides, the evidence further shows that the administration of his estate had closed and that Gillie Short as administratrix had been discharged. Therefore, there could be no interest in this controversy so far as Henry Short or his estate was concerned. Moreover, he was not interested in or a party to this suit. It has been held (Linn v. Hockaday, 162 Mo. l. c. 122, 61 S. W. 885) that the restriction contained in the provision of section 6359, Revised Statutes 1909, is not on a capacity which the wife had at common law, but only a restriction on the privileges conferred by this section of the statute. At common law, where the controversy arises between strangers in which the husband is neither a party to the suit nor interested in its outcome, the wife is competent to testify to conversations had between her husband and third parties. [See, Long v. Martin, 152 Mo. 668, 54 S. W. 473, and State v. Wooley, 215 Mo. 620, 686, 115 S. W. 417.]

The objection to the competency of the respondent as a witness because of the death of Henry Short, his partner and comaker of the $765 note and also of the note in suit, was properly overruled for the reason that section 6354, Revised Statutes 1909—providing that where one of the original parties to the contract is dead the other may not testify—does not apply to the present case where one of the parties on one part

is dead and another living and the party on the other part is living, it having been expressly held that where one of the comakers of a note is dead the surviving comakers are not disqualified; and likewise, that where a contract is made with a partnership in which all the partners take part, the death of one of the partners does not disqualify the survivors.   [Vandergrif v. Swinney, 158 Mo. 527, 59 S. W. 71; Hill-Dodge Banking Co. v. Loomis, 140 Mo. App. l. c. 74, 119 S. W. 967; Birdsall v. Coon, 157 Mo. App. l. c. 448, 139 S. W. 243.]

It is argued, however, that there is no one who testified positively that the so-called firm of "Short & Son" that purchased from respondent on April 15, 1905, was composed of Henry Short and F. S. Short, and that in view of the testimony of F. S. Short that he was not a partner, and of Gillie Short, widow of Henry, that F. S. Short was not in fact a partner, no such partnership existed, and that the conversation with Henry would be barred because he was the sole owner of "Short & Son." This objection would be sound were it not met by the principle that although one may not in fact be a partner, he may so hold himself out as to be bound to those dealing with the supposed firm as a partner. The undisputed evidence that the firm was conducted in the name, "Short & Son"—that Henry Short had no son—that F. S. Short was in and about the store performing services that are ordinarily performed by a partner—that the bank account, the checks, shipments of goods purchased, and the advertising matter, held out to the world that the firm was composed of Short and son— that the general belief in the community was that the firm was composed of Henry Short and his father, F. S. Short—coupled with the statement of Gillie Short that probably everyone except the members of the family understood that F. S. Short was a partner, and with the testimony of the respondent that in mak-

ing the trade with "Short & Son," F. S. Short was present directing and demanding what "Short & Son" would and would not do—all this was enough to entitle the respondent to deal with "Short & Son" as a partnership composed of F. S. Short and his son, Henry. It was a question of fact under the evidence herein detailed as to whether they were partners, and the evidence was sufficient to sustain the finding of the court to the effect that they were partners. In law, they would be partners to such an extent as to establish liability against either. Having held himself out, lending his name, and by his conduct as testified to by the respondent, leading respondent to believe he was a member of the firm of "Short & Son," would bar F. S. Short from denying that he was a partner. [30 Cyc. 390; Schultze v. Steele, 69 Mo. App. 614; Huyssen v. Lawson, 90 Mo. App. 82; Bates on Partnership, Vol. 1, p. 108, sec. 90.] Without, however, going to the extent of holding that "Short & Son" was a partnership by estoppel, the testimony of respondent and of Gillie Short is positive that both Henry and his father, whether dealing as partners or copurchasers, were trading on the one part for the purchase of the goods with respondent as party of the other part.

The objection urged that there was no allegation of payment fails because the answer does plead that respondent has paid all that was owing on the indebtedness due from him to F. S. Short. As to the $765 note, the execution of the note on December 30, 1907, which is the note sued on, was a payment of that original note. The pleadings and the undisputed evidence show that all of the $765 note had been paid at that time except respondent's portion thereof, it being one-third, and his defense was that in the payment of the $765 note by the note of December 30, 1907, there was a mistake made in the amount due, the mistake having occurred in figuring his unpaid balance.

Appellant contends that the demurrer to defendant's answer should have been sustained because it does not plead sufficient facts to show the mistake complained of, and cites Kronenberger v. Binz, 56 Mo. 121, and Marmon v. Waller, 53 Mo. App. l. c. 614, and other cases. On examining the first of these cases it will be seen that the answer was a general denial and the court very properly excluded testimony of a mistake under that plea. In the second case, the answer set up certain credits to which the defendant was entitled and which existed prior to the alleged settlement and undertook to go back of the settlement owing to the peculiar wording of the instrument witnessing the settlement. It was ruled that the answer was not sufficient. The distinction between that case and the one at bar is that it is not alleged in the answer before us that defendant was not given credit for the $169.24; his answer sets up the facts as he alleges them to be and pleads that the mistake was not in giving credit for something to which he was entitled, but that the mistake came about by the computation of the amount he was owning. In other words, he is not attempting to bring in some unsettled item or some item that was not before the parties at the time of the settlement and thus to overturn the settlement, but the mistake he alleges is in the actual mathematical result on the debits and credits before the parties. Respondent answers this contention in his brief by the following quotation from Joyce on Defenses to Com. Paper, Sec. 17: "'It has been determined that in an action by the payee of a note against the maker, it may be shown by the latter that by mistake the amount expressed therein is too large. So where a note is given on a settlement of account, it may be shown that the balance was produced by mistake.'' There is no doubt that *mistake* may be invoked in a defense which seeks to reform a written instrument that does not express the agreement between the parties. And it would not seem that

it is necessary to pray for a reformation where the mistake is merely set up as a defense and the correction or reformation of the instrument is not necessary in order to place the defendant in *statu quo* or to give back some title or position surrendered by him in the settlement. [Barlow v. Elliott, 56 Mo. App. 374; Tapley v. Herman, 95 Mo. App. l. c. 543, 69 S. W. 482; Seiberling v. Tipton, 113 Mo. 373, 21 S. W. 4; Aetna Life Ins. Co. v. American Zinc, Lead & S. Co., 169 Mo. App. 550, 154 S. W. 827.]

Appellant further contends that the note for $765 showed on its face that it was a partnership indebtedness therefore making respondent liable for the full amount, and that even though a settlement was made charging him (respondent) more than his one-third, he cannot complain because he was liable prior to the settlement for all, citing Willis v. Barron, 143 Mo. 450, 45 S. W. 289, and other cases. But the facts in the case at bar are distinguishable in that there is no dispute between the parties that Thomas was liable for anything except one-third of the $765 note.

Appellant misconceives the mistake when in his brief he argues that the mistake was not mutual. On December 30, 1907, according to defendant's testimony, there was no misunderstanding whatever with regard to the proportion of the $765 note he was to pay or as to the fact that he was to get and would get credit for the $169.24 or that there was some balance due on the $765 note from respondent. We cannot think of a mistake which could have been more mutual than that disclosed in this case, provided respondent's own testimony and that corroborative thereof is to be believed. All the facts and circumstances were understood, and the error or mistake came about by one of them figuring the result from the agreed data before them and the other two in his presence seeing the figures and accepting the result reached as the correct result.

Appellant finally relies for a reversal of this judg-
ment on the conduct of the respondent in failing to
bring F. S. Short's attention to the alleged mistake,
claiming that by his laches he should now be estopped
from making this defense—especially in view of the
fact that he failed to call F. S. Short's attention to the
mistake during the lifetime of Henry Short, and did
not do so for some time after the date the note was
executed.

If it is true that respondent failed to call F. S.
Short's attention to the alleged error for several
years, we do not believe that it was necessary for him
to make his defense to the payment of the note until
suit was brought on the note. Looking at the case from
another viewpoint, it might be asked why F. S. Short
failed to bring suit on the note which was long past
due prior to Henry Short's death.  F. S. Short waited
four and one-half years after the note was due before
attempting to collect it.

In our opinion the doctrine of estoppel cannot be
invoked against the respondent.  If it is true that F.
S. Short told respondent he was the only one who owed
anything on the $765 note and that Henry had fully
paid up his balance prior to December 30, 1907, re-
spondent, relying upon this statement and believing
it to be true, should not be held for F. S. Short's fail-
ure to prove any indebtedness he might have (on ac-
count of a mistake) against Henry Short's estate.
There must be some gross negligence or fraudulent
intent shown against the party sought to be estopped.
Besides, it is admitted that the respondent claimed a
mistake prior to the time the estate of Henry Short,
deceased, was closed.  [See, DeBerry v. Wheeler, 128
Mo. 84, 30 S. W. 338; Bright v. Miller, 95 Mo. App. l. c.
276, 68 S. W. 1061; Scrutchfield v. Sauter, 119 Mo. 615,
24 S. W. 137.]  As was said in the case of Blodgett v.
Perry, 97 Mo. l. c. 273, 10 S. W. 891: "The representa-

tion must have been made with knowledge of the
facts.'' And, by the same process of reasoning, the
acquiescence must have been with knowledge of the
facts. How could respondent have known that F. S.
Short was being lured into failing to assert his claim
against Henry when respondent had been told by F. S.
Short that Henry had fully paid? Besides, F. S. Short
does not testify that it was owing to the conduct of re-
spondent that he failed to prove any claim he had
against the estate of Henry Short. And the question
asked and the answer he gave (appearing presently)
with reference to a letter written by respondent to Gil-
lie Short calling attention to the respondent's indebt-
edness to F. S. Short and asking her to request F. S.
Short not to probate his claim against Henry's estate,
shows that F. S. Short did not rely upon the failure to
make known the mistake. The question and answer are
as follows: ''Q. Did Mrs. Gillie Short bring you a letter
or show you a letter from Henry Thomas after your
son's death, offering to take up this note with a new
note and secure it with a mortgage on his real estate,
and requesting her to ask you not to probate this claim
against your son's estate for the amount due on this
note? A. He had rather I would not, but if I did it
was all right.'' At the time this letter was written,
the respondent did owe F. S. Short a balance on the
original indebtedness according to respondent's con-
tention; besides, he at that time owed F. S. Short the
$116.09 note. But, as stated above, at no place in his
testimony does he say that he failed to make his claim
out of Henry's estate because of the conduct of the re-
spondent. And the respondent testified that in Oc-
tober, 1910, when the first payment of $75 was made
on the $401.01 note, he called F. S. Short's attention to
the mistake and this was evidently some time prior to
the closing up of Henry's estate as he died in 1909 and
his estate could not be closed until two years had ex-
pired. It has been often held that lapse of time short

of the period fixed by the Statute of Limitations will not bar equitable relief where the right is clear and there are no countervailing circumstances. [Cantwell v. Crawley, 188 Mo. 44, 86 S. W. 251; Summers v. Abernathy, 234 Mo. l. c. 167, 136 S. W. 289; Lindell Real Estate Co. v. Lindell, 142 Mo. l. c. 79, 43 S. W. 368; Spurlock v. Sproule, 72 Mo. l. c. 511.] As was said in the case of Shields v. McClure, 75 Mo. App. 631, the party invoking the doctrine of estoppel must have been induced to act upon the false representation or concealment of material facts. In the case of Southern Bank v. Nichols, 235 Mo. l. c. 412, 138 S. W. 881, this language is used: "The facts of this case do not show that she misled plaintiff or induced it to do any act, or that she intentionally concealed from it her right and title to the property in question." Not knowing of any mistake in the settlement between F. S. Short and Henry Short, and relying upon the statement of F. S. Short that Henry had fully paid, would relieve the respondent of the charge that he was withholding the information concerning the mistake from F. S. Short for the purpose of inducing him not to proceed against Henry or his estate. The absolute failure of proof that it was a withholding of the information that prevented F. S. Short taking such steps, in view of the fact that the information was brought to him before the administration of Henry's estate closed, certainly could not work an estoppel against the respondent under the facts of this case.

The trial judge made the finding that we think should have been made in this case. He believed the testimony of the respondent and that of Gillie Short, which, in connection with the following circumstances justified his finding: (1) The fact that respondent's calculations tend to bear out his theory; (2) The peculiar coincidence of the credit being made on the same day the goods were purchased from the respondent, and of the amount coming to the respondent from

the sale to "Short & Son" after deducting the $116.09 note with interest coming to Henry Short corresponding in dollars and cents, when the $10 telephone item is added to it; (3) The age of F. S. Short, and the fact that in his testimony, although he claimed that Henry Short paid on his own account the $169.24, at one place he stated that the credit was put there on the date the note was given, at another place, that Henry paid the money between the times (having reference to the time of the sale and the time of the settlement in 1907), and at another place that the credit was placed there on the date of the sale, and the fact that he failed to remember what amounts were paid between the date above mentioned and his answer to a question (which is hard to understand)—"If I had been minded to give Henry Short the $169.24 that would not settle the Henry Thomas part. Henry Short paid me every cent he owed me on that. Q. Then this credit was placed on the $765 note before Henry Short had paid you any money? A. He might have paid me the money right then"—showing that his memory was not good as to these transactions, which might well be expected from a man of his advanced age.

Owing to the fact that this is an equity case requiring a complete review of the evidence, and because of the transactions which had to be analyzed to reach the true state of facts, and by reason of the many assignments of error alleged by appellant, it has been found necessary to extend this opinion to the length it has gone. After a full review we are convinced that the judgment is a righteous one, and it is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.