## LONG v. MARTIN, Appellant.

Division One, December 12, 1899.

1. **Husband and Wife**: CONFIDENTIAL COMMUNICATION. Confidential communications between husband and wife are such as pass between them when they are alone. What was said by her tending to authorize her husband to act as her agent in the sale of her stock, in the presence of the prospective buyer, may be testified to by her husband.

2. ———: HUSBAND'S AGENCY. The fact that the husband is the wife's agent may be shown by his testimony.

3. **Replevin**: POSSESSION: INSTRUCTION. A definition of possession to the effect that if after the purchaser bought the stock from the seller they agreed that the seller should hold the same in possession for the purchaser and he did so then the seller's possession was the possession of the purchaser, is a sufficient definition of possession in replevin where the only question at issue is the right of the seller to sell the stock.

4. **Husband and Wife**: AGENT: WRITTEN AUTHORITY. The Married Woman's Act does not require that the wife's appointment of her husband to act as her agent to sell her personal property for her own use, should be in writing.

5. ———: PROOF OF AGENCY. But the proof that he was her agent in disposing of her property, must be clear and unequivocal.

6. ———: ———: PREPONDERANCE: BEYOND DOUBT. But the proof does not have to be such as to "leave no doubt in the minds of the jury that such authority was given" to him by her. It must be established only by a fair preponderance of the evidence.

*Transferred from St. Louis Court of Appeals.*

AFFIRMED.

W. H. MORROW and MARTIN & WOOLFOLK for appellant.

(1) The defendant's objection to plaintiff's testimony as to conversations and acts with John W. Allen should have been sustained. If as it was shown the property belonged to Mrs. Allen, then any statement, declaration or act of John

W. Allen about the property could not bind her, and was incompetent for any purpose.   (2) The testimony of John W. Allen detailing conversations between him and his wife was incompetent, and should have been excluded on defendant's objection.   They were then husband and wife, and the confidential relations between them made such conversations incompetent, although they had been subsequently divorced. Troovey v. Baxter, 59 Mo. App. 470; Brown v. Brown, 53 Mo. App. 453; Holeman v. Backus, 73 Mo. 49; Waddle v. McWilliams, 21 Mo. App. 298.   (a)   The purpose of this testimony was to prove the agency or authority of the husband to sell the property.   The husband is not competent to prove such agency in himself for the wife.   Bayse v. Railroad, 65 Mo. App. 468; Williams v. Williams, 67 Mo. 661.   (b)   Section 6864, R. S. 1889, can not be construed to change existing laws beyond what is expressed in its provisions, and hence the inhibition of section 8922, R. S. 1889, still exists.   Brown v. Dressler, 125 Mo. 589; Lindsay v. Archibald, 65 Mo. App. 117.   (3)   The definition of the possession required, as given in the instruction, is erroneous.   The property exceeded in value $30; no payment or note was given for several days after. R. S. 1889, sec. 3187.   (a)   The change of possession must be actual.   Bass v. Walsh, 39 Mo. 192; Ober v. Carson, 62 Mo. 209; Nance v. Metcalf, 19 Mo. App. 183.   (4)   The plaintiff's second instruction declares a proposition which, in effect and purpose, nullifies the provisions of section 6869, R. S. 1889.   If this is a correct proposition, a married woman need in no case give the husband written authority to convert and acquire title to the proceeds of her property.   He need do no more than to get her verbal permission to sell it, and then, as in this case, pocket the proceeds. A husband, without written authority, can not dispose of the wife's separate personal property. Smith v. Warden, 86 Mo. 382; McFarland v. Heim, 127 Mo. 327. ·   (5)   The instruction asked by defendant as to the character of proof required to prove agency of husband

should have been given.   Eystra v. Capelle, 61 Mo. 580; Mill Co. v. Brundage, 25 Mo. App. 268; Marble and Lime Co. v. Bauman, 44 Mo. App. 386; Macfarland v. Heim, 127 Mo. 327.

NORTON, AVERY & YOUNG for respondent.

(1)   Allen was a competent witness to prove the agency, as well as the facts connected with the agency.   Sec. 8922, R. S. 1889; Leete v. Bank, 115 Mo. 204.   His testimony was not incompetent as to the conversation between him, his wife and Long on the ground of confidential relations.   Darrier v. Darrier, 58 Mo. 233. (2) The instructions are unobjectionable. Taken as a whole they present the case fully and fairly.   The whole case perhaps can not be presented in one instruction, and when there are several instructions they must be read and considered one with another.   Skeen v. Engine Co., 28 Mo. App. 632; Pritchard v. Hewitt, 91 Mo. 547; Fitzgerald v. Barker, 96 Mo. 661.

VALLIANT, J.—This is an action of replevin to recover a lot of mules and hogs; it was begun in the justice's court whence it was carried by appeal to the circuit court of Lincoln county, and from there to the St. Louis Court of Appeals, and transferred to this court upon the certificate of one of the judges of the last named court that its decision is in conflict with certain decisions of this court named in the certificate.

The real controversy is between the plaintiff and Mrs. Allen; the defendant Martin is the son of Mrs. Allen and at the time the suit was begun was in possession of the property holding it for his mother.   The plaintiff bought the property from John W. Allen, who at the time was the husband of Mrs. Allen, but they have since been divorced.   There was some testimony tending to show that it was Allen's property when

he sold it, but there was also testimony tending to show that it belonged to Mrs. Allen, and the case seems to have been given to the jury on the theory that it was her property at the time the plaintiff bought it.   The really disputed point of fact on which the case turned was the alleged authorization of the sale by Mrs. Allen.   On that point the testimony of the plaintiff in his own behalf was to the effect that he went to the farm at Allen's request to look at the stock with a view to buying, and after they had talked the matter over and had about come to an agreement as to price and terms, the plaintiff who "knew that Mrs. Allen was the moneyed party of the firm," and had heard of a probable separation between them, asked Allen, "Will any disposition you make of this property be satisfactory to your wife?"   To which Allen replied, "Certainly, come into the house and see my wife."   That they then went into the house and saw Mrs. Allen, and her husband said to her in plaintiff's presence, "Mr. Long wants to buy the stock and he wants to know if any sale I may make of the stock or any disposition I may make of the stock will be satisfactory to you."   To which she replied:   "Yes, sir; anything Mr. Allen does will be satisfactory to me, I want to sell all the stock on the place."   Adding that she was going to quit the farm.   That it was upon that assurance he made the purchase from Allen and gave him his note for the purchase money.   Allen testified over defendant's objection as to what his wife said in the interview corroborating the plaintiff.

The testimony for the plaintiff also tended to show that the hogs were taken off the place to be weighed, and for convenience in shipping were taken back to the Allen farm, and the mules were also left there for the same purpose, under agreement with Allen that plaintiff was to pay him for the corn consumed in keeping the stock until it could be shipped. After that, Martin, the defendant, took the stock and carried it to his own farm for his mother, and had it in possession when the writ of replevin issued.

Mrs. Allen's account of the interview was to the effect that her husband came with the plaintiff Long to her house and opening the door to the room where she was, introduced Mr. Long and went away, Mr. Long alone came in the room. He began the conversation by reference to his acquaintance with her former husband and after awhile said that he understood she wanted to sell her property to which she replied yes she wanted to sell and leave the farm. He said he did not care particularly about buying, but never saw the day he could not handle a few more stock. That was about all that was said relating to business and he soon arose and left the house. There was nothing said about Mr. Allen selling or disposing of the property and she never gave him authority to do so; she did not hear of the sale until several days after it occurred.

At the request of the plaintiff the court instructed the jury as follows:

"If the jury believe from the evidence that at any time before the commencement of this suit plaintiff had possession of the hogs and mules in dispute, and bought and paid for them as elsewhere in plaintiff's instructions defined, then the verdict should be for the plaintiff. And a possession such as to entitle him to recover need not be a personal possession, but if from the evidence you find that John W. Allen, after he sold the stock to Long, contracted and agreed with Long to take possession of said stock and hold them for Long as Long's property, and did so, then the court declares the law to be that the possession of Allen was the possession of Long.

"Though the jury may believe from the evidence that the mules and hogs in dispute belonged to Mrs. Allen, yet if you further believe from the evidence that at or about the time and before plaintiff purchased the property from John Allen (if you believe from the evidence he did so purchase them) he went to see Mrs. Allen in company with Allen, with reference to the purchase of said stock, and that Mrs. Allen authorized him to purchase said stock from Allen, and

authorized Allen to sell them to him, and afterwards Long purchased said stock and paid Allen for them, either by note or otherwise, then the verdict will be for the plaintiff."

To which defendant excepted.

The defendant asked the following instruction:

"If the jury believe from the evidence that the property in question belonged to Catherine Allen and not to John Allen, her husband, and that said John Allen made a sale of said property to the plaintiff without authority from the said Catherine Allen, then the verdict will be for the defendant; and the court further instructs the jury that to show authority from the said Catherine Allen to said John Allen to sell said property the evidence must be clear and strong and leave no doubt in the minds of the jury that such authority was given."

Which the court refused, to which defendant excepted.

The court then changed said instruction to read as follows:   "If the jury believe from the evidence that the property in question belonged to Catherine Allen and not to John Allen, her husband, and that said John Allen made a sale of the property to the plaintiff without authority from the said Catherine Allen, then the verdict will be for the defendant; and the court further instructs the jury that to show authority from the said Catherine Allen to said John Allen to sell said property the evidence must preponderate in favor of plaintiff, that is, the weight of the evidence show such authority on his part."

And gave said instruction as changed and modified, to which the defendant excepted.

The court on its own motion gave the following instruction:

"The court instructs the jury that if they find from the evidence in the case that the property sued for in this action was, on or about the 7th day of June, 1896, the property of one John W. Allen, and was purchased by plaintiff from said

Allen on said day, and afterwards delivered to him, or if they find from the evidence the said property belonged to Mrs. Allen, the wife of said John W. Allen, on the 7th June, 1896, and the plaintiff before purchasing same from John W. Allen conferred with Mrs. Allen who represented to him that said John W. Allen had the right and authority to sell the same, and relying upon the truth of said representations by Mrs. Allen plaintiff bought said property and executed and delivered his note therefor to said John W. Allen, then and in either case the verdict should be for the plaintiff, otherwise for the defendant."

To which defendant excepted.

There was a verdict for plaintiff, a motion for new trial by defendant which was overruled, and appeal taken.

The defendant assigns for error: 1st, the admission of the testimony of John W. Allen; 2d, the instructions given at the request of the plaintiff; 3d, the modification of defendant's instruction relating to the character of proof required to establish the husband's agency.

I.    The objection urged against the legality of the testimony of Allen is on three grounds; 1st, that it essayed to disclose confidential communications between husband and wife; 2d, that it was an attempt to establish the husband's agency by his own testimony; 3d, under section 8922, Revised Statutes 1889, he was incompetent, because he was the husband of one of the parties.

1st.    Confidential communications between husband and wife are such as pass between them when they are alone.    The only conversation with his wife that this witness was permitted to testify in relation to over defendant's objection was that held in the presence of the plaintiff Long which was therefore not confidential.    When he attempted to speak of a conversation with Mrs. Allen which occurred two or three days after the sale to Long, objection was interposed and sustained by the court. He did volunteer a statement not responsive to the question to

the effect that his wife asked him to close the matter up as she wanted to go to Montana, but there was no objection made to that.

2d.  It was at one time held to be the law of this State that a husband or wife was incompetent to testify to establish his or her agency in such case (Williams v. Williams, 67 Mo. 661; Wheeler & Wilson Mfg. Co. v. Tinsley, 75 Mo. 458) but the more recent consideration of that subject has led to the opposite conclusion.   [Leete v. State Bank, 115 Mo. loc. cit. 204.]

3d.  As to the objection that Allen was incompetent under section 8922, Revised Statutes 1889, because he was the husband of one of the parties in interest, it is sufficient to say that that objection was not made in the circuit court.   The only objection made to his testimony at the trial was to his testifying as to confidential communications with his wife, and that he was not permitted to do.   Besides it appeared from the testimony of Mrs. Allen that at the time of the trial they had been divorced which fact although it would not authorize him to testify as to confidential communications had with her before the divorce, would remove from him the common law disability of a husband to testify in his wife's case.

II.   Appellant's criticism of the first instruction given for the plaintiff is founded in a misapprehension of its meaning.   It does not ignore the question of Mrs. Allen's title, but on the contrary seems rather to ignore that of Allen.   It directs a verdict for plaintiff if the jury find that he had purchased the stock as elsewhere in plaintiff's instruction defined, and that reference was to the second and only other instruction of plaintiff, in which the jury are instructed that if it was Mrs. Allen's property and she authorized plaintiff to purchase it from Allen and he did so they should find for plaintiff. In the instruction given by the court of its own motion there is an hypothesis that involves Allen's claim of title, but the theory of the instructions asked by the plaintiff seems to be

that he was to recover by proving that Mrs. Allen consented to the sale.

Objection to this instruction is also made that the definition of possession is not sufficient. That definition is only to the effect that if after Long had bought the stock from Allen, they agreed that the latter should hold the same in possession for Long, and he did so, then Allen's possession was the possession of Long. Simply as a definition of possession there is no error in that, and that is all it purports to be and it is only as such that defendant's counsel criticises it. It is not comprehensive enough to cover a question arising out of the statute of frauds, but if counsel had considered that question in the case, they could have asked an instruction covering it, which they did not do. The evidence showed that after the price and terms had been agreed on the hogs were driven away to be weighed, and brought back to the farm by agreement between Long and Allen; that the latter was to keep them and the mules until they could be shipped, there being some delay owing to a washout in the railroad, and in the meantime Long was to pay Allen for the corn consumed; and as soon as the terms were agreed on, and the amount ascertained by weighing the hogs, Long gave Allen his note for the price. Under this evidence the counsel for defendant did not see fit to ask an instruction based on the statute of frauds, and none was given.

The learned counsel deem the second instruction for plaintiff in conflict with the provisions of section 6869, Revised Statutes 1889, which is the statute in relation to married women's separate property which they insist requires the husband's appointment as his wife's agent to dispose of her separate personal property to be in writing. We may note in passing that this point was not made in the circuit court. When the evidence tending to show that Mrs. Allen had authorized her husband to sell the stock was offered it was not objected to on the ground that it was not in writing, but the only objection

interposed was that it was a confidential communication from the wife to the husband.

But passing to the consideration of the statute the language is: "Her personal property shall not be deemed to have been reduced to possession by the husband by his use, occupancy, care or protection thereof, but shall remain her separate property, unless by the terms of said assent, in writing, full authority shall have been given by the wife to the husband to sell, incumber or otherwise dispose of the same for his own use and benefit."

The object of that statute is to secure to the married woman the title to her own property, owned or coming to her as therein mentioned, as against the husband's common law marital rights. At common law he had a right to reduce her personal property and choses in action to possession and when reduced to possession it became his. By this section reducing the property to his possession did not give the title to him unless it was so for that purpose with her express assent. Then the lawmakers foreseeing that by the usual supervision and control which a husband would have over his wife's property and his apparent possession of it with her knowledge, she or her heirs might be placed at a disadvantage if a question between her or them and him or his heirs or assigns should arise, expressly enacted that no such care or possession by him should impair her title unless her assent should be expressed in writing authorizing him to reduce it to possession and sell, incumber or otherwise dispose of it for his own use. The proviso relates only to the subject of the passing of the title from wife to husband for his own use and benefit and in effect declares that no assent of hers to an act of his shall have that effect, unless her assent be in writing and that purpose expressed, but it does not require that the wife's appointment of her husband to act as her agent to sell her personal property for her own use should be in writing.

In Smith v. Warden, 86 Mo. 382, cited in the brief of

counsel in support of their contention, it is only decided, on this subject, that a husband without authority from his wife had no right to release the defendant from liability for personal injuries suffered by the wife. That decision was not based on the proviso in that section of the Married Woman's Act referred to, but on the main clause of the Act which gave to the wife as her separate property damages recovered for personal injuries to himself. In that case the husband had not assumed to act as agent for his wife but in his own right.

In Macfarland v. Heim, 127 Mo. 327, the point decided, was that a married woman could not appoint an agent as to property not held as her separate estate. In that decision reference is made to the Married Woman's Act of 1875, and incidentally it is said that her authority to appoint her husband to act as her agent must be in writing. But a construction of that statute was not there involved and the decision was not so intended.

In Rodgers v. Bank, 69 Mo. 560, cited in the decision last referred to, the husband having possession of the wife's money attempted to appropriate it to his own use and what is there said is to that point. The court discusses the question of the power of the wife to appoint her husband her agent as to her separate estate and recognizes the power and recognizes also the necessity of clear proof to establish such agency, but does not intimate that it is necessary that the appointment shall be in writing. Indeed the subject there discussed is the probative effect to be given to the conduct of the wife in suffering the husband to act as if he were her agent.

The court in that case per NAPTON, J., uses this language: "The legislature have required the written assent of the wife, to the husband's reduction of her personal property to his possession. They have not prohibited her from making him her agent, nor altered the common law in that respect. But the spirit of legislative enactments corresponds with such judicial decisions as require very clear and unequivocal proofs of such

agency." Therefore, we hold that whilst the husband's agency need not be in writing yet the proof of it should be clear and unequivocal, and this brings us to the discussion of the last point insisted upon by the learned counsel for appellant and the point on which the learned judges of the St. Louis Court of Appeals were unable to concur.

III.    The instruction asked by the defendant on the question of Allen's authority from his wife to sell the property concluded thus, "the evidence must be clear and strong and leave no doubt in the minds of the jury that such authority was given." But the court struck that out and inserted in lieu, "the evidence must preponderate in favor of plaintiff, that is, the weight of the evidence show such authority on his part."

The question thus presented is this: Should the court in such case so instruct the jury that although they might be satisfied by a fair preponderance of the evidence that the wife had given the authority, yet if a doubt remained in their minds on that point their finding should be that no such authority was given?

The common law avoided many of the questions that now arise under the enlarged rights and liabilities conferred by statute on married women and therefore the fixed rules of the common law and even the general spirit of the common law will not always furnish us a satisfactory method of solving such questions, because the rules of law are changed and the spirit of the statutes is at variance with that of the old law.

In Eystra v. Capelle, 61 Mo. 578, cited in support of appellant's theory, the husband acting for his wife negotiated the sale of land of hers which by their joint deed they conveyed for the consideration expressed in the deed of $3,000; this consideration not having been paid, the wife brought suit for it after her husband's death and the defense set up was an oral agreement between the husband and the purchaser for a different consideration; it did not appear that the wife had any knowledge of such an agreement, or notice that her husband

had assumed to act for her otherwise than to negotiate the sale on the terms shown on the face of the deed. It was held that she was not bound by the pretended agreement with her husband as there was no authority from her shown. The court, per WAGNER, J., said: "No agency can be implied, for the rule is, that to establish an agency for the wife on the part of the husband, the evidence must be cogent and strong, and more satisfactory than would be required between persons occupying different relations." Citing 2 Bish. Law of Mar. Wom. sec. 396; Rowell v. Klein, 44 Ind. 291; McLaren v. Hall, 26 Iowa, 297.

BISHOP in the sections referred to discusses the subject of the husband's implied agency and points out the difference to be observed in drawing conclusions from the conduct of the husband in reference to his wife's affairs with her knowledge and that when the parties do not stand in such relation. He says: "Under various circumstances an unmarried woman, by permitting another person to possess and use her property, would be bound by any disposition he might make of it on the ground of presumed agency, where, should a husband do the same thing the agency ought not to be inferred." The author then discusses the reason, which is obvious, and cites the Indiana and Iowa cases above named. The Indiana case was replevin for wheat in the sheaf which was grown on the land of Mrs. Rowell, the plaintiff; the defendant had introduced testimony to show that Mrs. Rowell's husband had made an agreement with the defendant under which he claimed; the only evidence of agency was a witness who testified that he was present when Mrs. Rowell had requested her husband to go and forbid the defendants cutting the wheat. It was when the husband went on that mission that it was claimed he made the agreement with defendant, who insisted that the husband having been sent in relation to that business became the wife's agent. It was in such a case that the Indiana court said: "The wife may constitute the husband her agent, but to establish this,

the evidence must be clear and satisfactory and sufficiently strong to explain and remove the equivocal character in which she is placed by reason of her relation of wife." The Iowa case presented a question of implied agency of the husband for the wife and her ratification of his acts as such. The husband had made a contract with a carpenter to make certain improvements in his wife's house; he had not professed to act as her agent, but it was attempted to establish an agency by implication from his conduct with her knowledge, or of ratification from her conduct in accepting the benefits of the work. It was in that connection that the Iowa court used this language: "The evidence necessary to establish a ratification by the wife, of a contract made by her husband as her agent, must be of a stronger and more satisfactory character than that required to establish a ratification by the husband of the act of the wife as his agent, or than as between independent parties." Then follows the language which is quoted by Judge NAPTON in Rodgers v. Bank, *supra*: "And for the reason that (in the general experience of the past, at least, if not in the philosophy of the present), the wife is under the control of, and subordinate to, the husband; and neither good law nor sound reason will require the wife to destroy the peace of her family and endanger the marriage relation by open repudiation or hostile conduct towards her husband, in order to save her property from liability for his unauthorized contracts."

The latest case discussing this subject to which our attention has been called is Washington Savings Bank v. B. & D. Bank, 130 Mo. 155. In that case certain bank stock had been transferred by the husband to the wife without her knowledge and the only evidence of ratification by her conduct was the receiving by her of dividends on the stock; but there was other evidence to show that she had other stock and other dealings with the bank, and when she received those dividends it did not appear that she knew what it was for. BURGESS, J., delivering the opinion of the court, cites and quotes from the

cases above referred to and, applying the doctrine·in them contained, concluded that the chancellor's finding that the wife was not bound by the unauthorized act of her husband in that case, was sufficiently sustained by the evidence.

Upon a review of all these cases it will be seen that there was not one of them in which there was any very great conflict of evidence or in which there was any serious case made against the wife, and there was not much in any one of them calling for strong declaration of rules of evidence for her protection.

But it is upon the strength of these cases that it is contended that when a question of this kind is submitted to a jury under conflicting evidence they should be instructed to find in favor of the wife if a doubt remains in their minds although a fair preponderance of the evidence is against her. We do not think that is the law.

We recognize the wisdom and justice of the principles announced in the cases above referred to. It would be very unjust to draw the same inferences from a married woman's behavior in reference to her husband's management of her property as we would naturally draw from the conduct of parties not bearing that relation to each other. If it be a question of implied agency, or ratification, or estoppel, the jury should be so cautioned in instructions that they would know how to distinguish wifely conduct from business acts. The trial judge should magnify the office of wife over that of the mere woman of business. But after the jury has been properly cautioned and instructed along that line so that they will know how to appreciate the circumstances and weigh the evidence they should render their verdict according to its fair preponderance.

The law recognizes that with all the care and caution possible in human tribunals mistakes will sometimes be made, judgments will sometimes be wrong, and therefore in criminal cases, where it is the State on one side and its citizen on the

other and where an interest is involved more sacred than property, where the State is safer in letting a guilty one go than in punishing an innocent one, where humanity pleads its own fallibility of judgment in dealing with life and liberty, the rule is that the charge must be proven beyond a reasonable doubt. But in a civil suit where it would be as wrong to make a mistake against one as against the other party, the only just rule is to weigh the evidence with the best light the law can give us and decide according to its fair preponderance.

In the case at bar there was really no circumstances of the nature we have been considering to complicate the issues. It was a mere question of credibility of the witnesses, there was no question of implied agency, or ratification, or estoppel, and there was nothing calling for instructions in regard to wifely conduct. The trial court committed no error in modifying the instruction in question, requiring the jury to find according to the preponderance of the evidence.

The case was fairly tried; it was a clear issue of fact depending on which set of witnesses the jury should believe. In such case the law says the jury is the sole judge.

This is the conclusion reached by the majority of the St. Louis Court of Appeals, and it is right.

The judgment of the circuit court is affirmed. All concur.