# GEORGE LA RUE v. L. W. BUNGENSTOCK, Appellant.

### Division One, March 5, 1923.

1. **INSTRUCTION: Given and Withdrawn.** Where the court gave for appellant two instructions defining the words "preponderance of the evidence" in the exact same words, it was not error to withdraw one of them, but a course to be commended.

2. ———: **Preponderance of Evidence: Definition.** An instruction telling the jury that "by preponderance of the evidence is not meant the greater number of witnesses" contains a definition that is not approved or commended.

3. **EJECTMENT: Description of Land.** Where the land sued for in ejectment lies in the old bed of a stream, which was meandered by the Government survey, and is identified by an agreed ditch and Government starting point and distances, and no demurrer to the petition was filed, nor request made for a more accurate description, it will not be held on appeal by defendant, after a verdict for plaintiff, in which the land recovered was described, was approved by the trial court, that the description contained in the petition, although involved and inaptly expressed, in so vague, indefinite and uncertain that it cannot be identified on the ground.

4. ——— **Description in Verdict: Variance.** In ejectment a variance in the verdict in the description of the land recovered which differs from that contained in the petition, not in substance, but only in the words used to express the same thought, and including no land not included in the petition, is immaterial.

5. ———: **Agreement Upon Boundary: Ownership.** Adjacent proprietors may agree upon the boundary between their lands, and having acted upon such agreement they are bound by its terms. And this rule is peculiarly applicable in those cases in which the boundary is indefinite, uncertain or unknown. And it sometimes happens that such an agreement is the only fact upon which the dividing line can stand. Where two adjacent proprietors, whose lands were separated by an unsurveyed and uncharted stream, agreed that the middle of the old bed or channel should be the dividing line, and constructed a ditch on that agreed line, and both recognized it for a long number of years as the true line, one of them thereby became the owner of the land on his side of the ditch, and the other the owner of the land on the other side, and neither had a right to trespass upon the land of the other.

297 Mo.—37

Appeal from Atchison Circuit Court.—*Hon. James M. Dawson*, Judge.

AFFIRMED.

*Randolph & Randolph* and *Lee Mullins* for appellant.

(1) The petition fails to state a cause of action as to the land attempted to be described in the second paragraph of the petition, and upon which the verdict for plaintiff is attempted to be founded. Livingston County v. Morris, 71 Mo. 603; Bricken v. Cross, 140 Mo. 166; Bricken v. Cross, 163 Mo. 449. (2) The verdict does not follow the petition and is not for the same land described in the petition and does not definitely describe any certain tract of land. Brummell v. Harris, 148 Mo. 430, 446; Benne v. Miller, 149 Mo. 228, 245. (3) The judgment does not follow the petition, and for that reason cannot stand. Schneider v. Patton, 175 Mo. 684; Bricken v. Cross, 140 Mo. 166; Bricken v. Cross, 613 Mo. 449; Brummell v. Harris, 148 Mo. 430, 446. (4) There was no evidence of ownership or possession in plaintiff sufficient to justify a finding for the plaintiff. There could be no adverse possession in plaintiff beyond the fence which he built on the north side of the little ditch, and for that reason his case fails. There was no proof that possession was ever taken to the little ditch; the only pretense of possession was to the fence on the north side of the little ditch. Even if there had been an agreement (long before the ditch was dug), that the ditch or even the last thread of the water should be the division line, there must not only be an agreement, but a taking of possession under such agreement. It is difficult to see how plaintiff could claim to be in possession beyond the fence which he erected twenty years ago. Brummell v. Harris, 148 Mo. 430. (5) Instruction 1, given for the plaintiff, is clearly erroneous. It is not based on ownership and does not require that there should be any ownership found in any land in plaintiff whatever. The point of beginning of the new fence, which was constructed by

plaintiff, is mentioned as a gas pipe "mentioned in evidence," and the line is then described as running from said gas pipe in a southwesterly direction to a post in the fence belonging to plaintiff, said post being in the old bed of the Nishnabotna River. The evidence showed that the string of fence which plaintiff had erected was 1,173 feet long and, of course, would contain a good many posts. Which post is intended to be designated as the point sought to be established is not given in the instructions. We find the, same vice as to description in the form of verdict furnished by plaintiff. (6) Instruction 1, originally given for the defendant on the burden of proof, was read to the jury and after being read to the jury was withdrawn from the consideration of the jury. This was clearly error, as that instruction has been many times approved by our appellate courts and there was no reason in this case why the plaintiff should not assume the burden of proof just as in other cases. Kirchner v. Collins, 152 Mo. 394, 1. c. 397; Long v. Martin, 152 Mo. 668, 679, 683; Blitt v. Heinrich, 33 Mo. App. 244; Jones v. Durham, 94 Mo. App. 51.

*Hunt, Bailey & Hunt* for respondent.

(1) The description of the land in the petition is not indefinite and uncertain. Martin v. Hays, 228 S. W. 741; Bricken v. Cross, 140 Mo. 166, 170. (a) Appellant did not file a motion to make the petition more definite and certain. Stonemets v. Head, 248 Mo. 252. (b) The petition is sufficient in form and substance. Secs. 1815, 1820, R. S. 1919; Ross v. Alyea, 197 S. W. 268; Flournoy v. Sprague, 214 S. W. 183; Alexander v. Campbell, 74 Mo. 142; Fitzpatrick v. Garver, 253 Mo. 193. (2) Adjoining owners of land may agree upon the division line between their premises and each owns up to the agreed line as fully as if it were a natural boundary or their respective deeds called for it. Possession and use are evidence that there was an agreement to establish the line, and it is only necessary that such possession or use con-

tinue long enough to indicate what was the understanding of the adjacent landowners. Brummell v. Harris, 148 Mo. 430, 440; Martin v. Hays, 228 S. W. 741; Blair v. Smith, 16 Mo. 273, 280; Jacobs v. Moseley, 91 Mo. 457; Schad v. Sharp, 95 Mo. 573; Turner v. Baker, 64 Mo. 218, 237; Crider v. Milner, 99 Mo. 145. (a) Where, as in the instant case, both respondent and appellant claim from a common source of title, the doctrine that plaintiff must recover on the strength of his own title becomes inapplicable, since he need not go beyond the common source. Howell v. Sherwood, 242 Mo. 513, 527. (b) Even prior possession by plaintiff has been held not a prerequisite to the action. Fitzpatrick v. Graves, 253 Mo. 189, 193. (c) Respondent was not required to prove title from the Government, for the reason that appellant did not plead a different claim of title, respondent's evidence having proved a common source of title. Gordon v. Million, 248 Mo. 155, 166. (3) The court did right in withdrawing appellant's Instruction 1 from the jury, because the court had already given Instruction 3 for appellant on the question of the agreement, which was the vital issue in the case and correctly submitted the question of burden of proof. Porter v. Stock Yards Co., 213 Mo. 372, 380; Blitt v. Heinrich, 33·Mo. App. 243; Handlan v. Miller, 143 Mo. App. 110; Zackwick v. Ins. Co., 225 S. W. 139; State to use v. King, 44 Mo. 238; Waddell v. Metropolitan etc., 213 Mo. 8, 18. (a) Instructions bearing upon the same part of a cause must be read as a whole, and, if in that way, the law is correctly declared, there is no error. Sizer Forge Co. v. Weber Gas etc., 135 Mo. App. 89; Hunt v. St. Louis, 126 Mo. App. 268. (b) Where the trial court has given instructions that fully and fairly declare the law governing every issue in the case, it is not error to refuse others of the same meaning and import. West v. West, 144 Mo. 119, 131; Reno v. City of St. Joseph, 169 Mo. 642, 659; State v. Eaton, 138 Mo. 103, 106; State v. Grant, 152 Mo. 57, 71. (4) The verdict of the jury and judgment of the court are each correct in form and substance. (a) Where

there is sufficient evidence to take the case to the jury, and the proper instructions have been given, the finding is conclusive. Culbertson v. Hill, 87 Mo. 553. (b) No particular form is necessary; the verdict is sufficient if it covers in unmistakable terms just what the jury means. Provo Mfg. Co. v. Severance, 51 Mo. App. 260. (c) A verdict which can be made definite and certain without resorting to facts *aliunde* is sufficiently certain to base a judgment upon. McCormick v. Hickey, 24 Mo. App. 367. (d) In ejectment the verdict is sufficient if it simply finds for plaintiff. Lemmon v. Hartsook, 80 Mo. 13. (e) The verdict is sufficient if it fixes the boundary line so it can be ascertained on the premises. Buse v. Russell, 86 Mo. 209, 216; Meier v. Meier, 105 Mo. 411, 433.

BROWN, C.—This is ejectment for the recovery of certain lands in Atchison County, alleged to be the property of the plaintiff. The plaintiff's second amended petition upon which the cause was tried is, omitting formal parts, as follows:

"That he is the owner, and possessed in fee, and entitled to the possession of the following described real estate, situate, lying and being in the County of Atchison, in the State of Missouri, to-wit: A strip of land about two feet wide at the east end, about three feet wide in the center and about a foot wide at the west end, and lying south of the following described line: Beginning two feet north of the southeast corner of the northeast quarter of Section Four, of Township Sixty-three, of Range Forty-one; thence northwesterly seven rods; thence west bearing slightly south sixty-four to the middle of the old channel of the Nishnabotna River.

"And a strip of land lying south of the following described line: Beginning at the point last above described; thence southwesterly ten rods; thence north by west ten rods; thence west by south ten rods to the bank of the old bed of the Nishnabotna River; the last above described line is off the true line, which divides the plaintiff's land from the defendant's land, at the beginning

of said line it starts on the line and at a distance of ten rods from the beginning it is off the true line six feet; north ten rods further on said described line it is off the true line twenty-two feet; and where the said described line ends on the bank of said river said line is off the true line ten feet; that the amount of land belonging to plaintiff and taken by defendant is about one acre, laying in a wedge shape, it may be more, no accurate measurements as to quantity having been made.

"Plaintiff alleges that the defendant has built his fence on the above described lines, and the first above described line materially interferes with plaintiff's ingress, egress and regress from his dwelling house to the public road east, and is unsightly, and throws the public highway too close to his dwelling house and to plaintiff's great annoyance, and that said outlet is the only outlet plaintiff has to the public road.

"That by an agreement made and entered into between plaintiff and defendant the line dividing plaintiff's land from defendant's land was fixed and was to be and is where the last water run in the old channel of the Nishnabotna River; that plaintiff immediately took possession of said land; that said agreement was made and entered into more than ten years go; that plaintiff has been in open, notorious, actual, continual, peaceable and adverse possession of said land under said agreement for more than ten years, next before the filing of this petition, under color of title, to-wit, from the year 1902.

"That while plaintiff was such owner and so seized and possessed, and entitled to the possession of said land, the defendant afterwards on the —— day of ——, 1920, without right unlawfully did enter into and upon the same, and oust and eject plaintiff therefrom, and ever since that day has wrongfully withheld and still withholds the possession thereof from plaintiff, to his damage in the sum of one hundred and fifty dollars; that the value of the rents and profits of said land from the —— day of ——, 1920, and while the plaintiff has been excluded therefrom, is one hundred dollars.

"'Wherefore, plaintiff asks judgment for the restitution of said land and premises; for the sum of one hundred and fifty dollars for the wrongful withholding said land and premises, and one hundred dollars for the rents and profits of said land, and for his costs in this behalf expended."

No demurrer or other dilatory pleading was interposed to this petition, to which the defendant answered denying generally its allegations, pleading the Statute of Limitations of ten years, and alleging that he himself had been in actual possession of the same land for more than twenty-five years next before the institution of the suit.

To this the plaintiff replied by general denial, and pleading his own open, notorious and adverse possession for more than ten years, and that defendant assisted him in digging the ditch which they agreed upon as the boundary between their lands.

Upon these issues, which were stated at great length in the answer and reply, the parties went to trial to a jury, which returned the following verdict:

"We, the jury, find for the plaintiff.

"We, the jury, find that at the time of the commencement of this suit the plaintiff was entitled to the possession of the following described real estate, situate, lying and being in the County of Atchison, State of Missouri, to-wit:

"All that land lying north and west of the ditch in old channel of the Nishnabotna River extending to the fence erected by the defendant in the spring of 1920. Said fence commencing at the gas pipe mentioned in evidence, and thence in a southwesterly direction from said gas pipe to a post in plaintiff's fence, said post being in the old bed of the Nishnabotna River. The jury assesses the rent and profits of said land from the first day of March, 1920, to the day of trial, at the sum of two dollars."

The land involved in the suit is situated in the old bed of the Nishnabotna River where it passes through

Section 4, of Township 63, Range 41, of the Government survey. Originally the river ran through this section, but its course was deflected at a point north of the State line after the Government survey was made, and its old channel is still undergoing the natural process of obliteration. It was meandered by the Government survey, which only extended to its banks. It is unnecessary to refer to the ownership of the lands which were uncovered when the river ceased to flow over them, otherwise than to say that the lands so uncovered included the little parcel which is the subject of this appeal. It flowed between the lands owned by the parties to this suit, and plaintiff's claim has grown out of an alleged arrangement to divide the lands between the banks of the old stream between themselves. It is asserted by the plaintiff, and not denied by defendant, that the arrangement was that the dividing line should be the thread of the last flow of the water in this old channel. This was marked by a ditch kept open by them, and the plaintiff asserts and the evidence tends to prove that they also agreed that the portion of the fence to be built by each should be constructed on his own side of this ditch, which began at the quarter section corner on the east side of Section Four, which was marked by a stone, and extended in a westerly direction till it discharged into what is called in the record "the big ditch" further toward the southwest. The evidence also tends to show that 1122 feet westerly from this stone there was a piece of gas pipe set in the ground; and 104 feet further in a southwesterly direction, in the old channel, was a post in the fence constructed by plaintiff under that arrangement. These distances were slightly modified by other evidence which we may notice in our opinion.

It was from this latter post that the defendant, shortly before the bringing of this suit, took up the construction of the fence further to the southwest, but instead of crossing the ditch to his own land to the south and east of it he proceeded to build it on the west side upon the land of plaintiff. From the post already mentioned, he ran it in a southwesterly direction across plaintiff's land

for a distance variously stated in the evidence, to a post in a fence belonging to plaintiff which connected it with the "big ditch" in the old river bed. It is the land between this fence and the ditch forming the agreed line, that is now in question, the court having, at the close of all the evidence, instructed the jury to find for defendant as to the strip of land lying at the east end of the line between them.

The court, at the instance of plaintiff, instructed the jury as follows:

"The court instructs the jury that if they believe from the evidence that there was an agreement between plaintiff and defendant that the line separating the land of plaintiff from the land of defendant should be where the last water ran in the old channel of the Nishnabotna River; and you further believe, from the evidence, that the ditch constructed in the old channel of said river was constructed on said line where the last water ran in said channel; and you further believe from the evidence that in the spring of 1920 the defendant built a fence north and west of said ditch from the gas pipe mentioned in evidence, running from said gas pipe in a southwesterly direction to a post in the fence belonging to plaintiff, said post being in the old bed of said Nishnabotna River, and that the land between said ditch and said fence is north and west of said ditch, then your verdict will be for the plaintiff."

Among the instructions given for defendant the court gave the following:

"1. The jury are instructed that the burden of proof in this case is on the plaintiff to prove his case by a preponderance of the evidence, that is, by the greater weight of the evidence. If the evidence does not preponderate in favor of the plaintiff or is evenly balanced then your verdict should be for the defendant. You are further instructed that by preponderance of the evidence is not meant the greater number of witnesses, but by such evidence as is the more satisfactory and convincing to the mind of the jury.

*"3. The jury are instructed that unless the plaintiff has shown to your satisfaction by a preponderance of the evidence that the plaintiff and defendant agreed between themselves that the center of the little ditch was the line between them, your verdict must be for the defendant, as to the land claimed by the plaintiff in the old bed of the Nishnabotna River.'

"By preponderance of the evidence is not meant the greater number of witnesses, but such evidence as is the more satisfactory and convincing to the minds of the jury."

It afterward withdrew instruction numbered 1. This action is assigned for error.

I. The appellant complains of the action of the court in withdrawing from the consideration of the jury his instruction numbered one, defining the expression "preponderance of the evidence." This instruction, after telling the jury that the burden was upon the plaintiff

Instruction.

to prove his case by the preponderance, that is the greater weight of the evidence, defines the words "preponderance of the evidence" as follows: "By preponderance of the evidence is not meant the greater number of witnesses, but by such evidence as is the more satisfactory and convincing to the mind of the jury." Following this the defendant asked and the court gave the defendant's instruction three, which defines the same words as follows: "By preponderance of the evidence is not meant the greater number of witnesses, but such evidence as is the more satisfactory and convincing to the minds of the jury." Having given this instruction the court withdrew from the consideration of the jury, instruction numbered one, from which we have quoted the definition.

The defendant complains that, while the court may have properly refused either of these identical definitions, yet, having given them both, the withdrawal of one might have a prejudicial effect upon the mind of the jury, evidently overlooking the fact that its unnecessary

repetition might possibly create a similar impression. We are inclined to think that anything which promotes or encourages brevity in the records of the courts is to be encouraged, and are unwilling to hold that the avoidance of so manifest a repetition ought not, except under special circumstances, to be held reversible error.

It is unnecessary that, in determining the points presented here, we should express either approval or disapproval of this definition. It tells the jury in plain and unmistakable words that "'preponderance of the evidence" does not mean the greater number of witnesses.

Definition. The transitive verb "to mean" is defined by our lexicographers "to have in mind," or "to intend." That the words defined are intended to tell the jury that they must exclude from their minds the number of witnesses by which a fact in issue is attempted to be proven is unthinkable. The appellant cites, in support of the formula he has adopted, Kirchner v. Collins, 152 Mo. 394; Long v. Martin, 152 Mo. 668; Blitt v. Heinrich, 33 Mo. App. 243; Jones v. Durham, 94 Mo. App. 51. We see nothing in any of these cases justifying the form adopted in these instructions, and there seems to us to be much reason to apprehend that it might mislead those whom it is intended to instruct.

II. The appellant contends that the petition fails to state a cause of action in that the description of the land sued for is so vague, indefinite and uncertain, that it cannot be identified upon the ground, and that the same uncertainty applies with equal force to the description as contained in both the verdict and judgment.

Indefinite Description. This seems to be the paramount question in the case. It is simplified by the fact that by its instruction numbered "1A," given at the request of the appellant, the court withdrew from the consideration of the jury all lands lying south of a line of fence extending from a point about two feet north of the southeast corner of the northeast quarter of Section 4 of Township 63 of Range 41 in a westerly direction to the middle

of the old channel of the Nishnabotna River, and direct-
ing a verdict for defendant as to all such lands. Al-
though the word "'rods" is omitted from the petition
after the word "sixty-four," those words plainly refer
to the word "rods" which precedes them, and that the
line referred to is therefore seventy-one rods or one
thousand one hundred seventy-one and a half feet in
length by actual measurement. The exact distance is
not, however, important in this connection. The im-
portant feature lies in the fact that it ends in the middle
of the old bed of the Nishnabotna River, which is fixed
by the agreement pleaded in the petition as the true line
between the parties and is used synonymously with the
words indicating the place where the last water ran in
that stream. It therefore follows that the point of be-
ginning of the fence which constitutes the northern and
western boundary of defendant's alleged unlawful pos-
session began in the middle of the old river bed which
constituted the entire eastern and southeastern boundary
of plaintiff at that point. Neither party has shown any
paper title to the land involved in the dispute. It lies,
as the evidence discloses, in the old bed of the Nishna-
botna River, which was meandered by the Government
survey. When the course of the river was changed by
artificial means these abutting proprietors took pos-
session of its former bed, and agreed between themselves
upon the last thread of this stream of water as their
boundary, and took possession accordingly. The posi-
tion of the abutting lands on either side being the in-
signia of the possession of each in the river bed. As be-
tween them this became their permanent boundary.

Returning to the petition, we find that although the
cause of action stated as to land lying south of the first
seventy-one rods of fence which we have described was
determined by the court adversely to the plaintiff upon
the defendant's instruction in the nature of a demurrer
to the evidence it still performs the office of forming a
starting point for the lines bounding the remainder of
the lands which the plaintiff seeks to recover. Although

the courses and distances may be defectively stated their starting point is given with absolute certainty with reference to the Government survey, and we have only to follow the fence to find the last post in the middle of what was once the channel of the Nishnabotna River to find the line on which the remainder of the fence which constitutes the northwesterly boundary of the land now in question is standing. There is no question raised as to the continued presence of the fence described in the petition as follows:

"Beginning at the point last above described; thence southwesterly ten rods; thence north by west ten rods; thence west by south ten rods to the bank of the old bed of the Nishnabotna River; the last above described line is off the true line, which divides the plaintiff's land from the defendant's land, at the beginning of said line it starts on the line and at a distance of ten rods from the beginning it is off the true line six feet; north ten rods further on said described line it is off the true line twenty-two feet; and where the said described line ends on the bank of said river said line is off the true line ten feet; that the amount of land belonging to plaintiff and taken by defendant is about one acre, laying in a wedge shape, it may be more, no accurate measurements as to quantity having been made."

The evidence shows that the middle of the main channel of the Nishnabotna River is still marked by a ditch, and even if it were not could be replaced as well as could any boundary upon an unnavigable stream.

The cause was tried on the second amended petition filed so that it was the culmination of three attempts to describe this land satisfactorily in pleading. That it satisfied the defendant appears from the fact that he filed no demurrer, nor did he ask that it be made more definite and certain in any particular. We note especially that during the somewhat protracted trial, the plaintiff's counsel examined and cross-examined witnesses without indicating any doubt as to the description of the lands, or other questions involved in the inquiry. We think the

petition expresses with sufficient certainty the matters presented in this appeal.

III. What we have already said leaves little to be added with respect to the sufficiency of the description
**Description in Verdict.** contained in the verdict and judgment, which are, in that respect, identical. This description is as follows:

"All that land lying north and west of the ditch in old channel of the Nishnabotna River extending to the fence erected by the defendant in the spring of 1920. Said fence commencing at the gas pipe mentioned in evidence, and thence in a southwesterly direction from said gas pipe to a post in plaintiff's fence, said post being in the old bed of the Nishnabotna River."

The fact that the gas pipe is mentioned in this description as the point of beginning constitutes the only deviation from the description contained in the petition. It is not suggested in argument that there is any variance in this description from that contained in the petition except in words by which the same thought is expressed. The evidence shows that the same fence constructed by defendant in March, 1920, constitutes the inclosure on the north and west of all the lands described in either. The property sued for is all the land lying between this fence and the agreed line between the parties, being the thread of the last running water in the old bed of the Nishnabotna River. If there is material variance between the two descriptions, so that there is any land included in the verdict and judgment which is not included in the petition our attention has not been directed to it.

IV. The evidence shows and the appellant admits that the respondent's fence constructed on his own land and near the dividing line between himself and defendant, extended westerly from the section line at least one thousand, one hundred and seventy-three feet. This is
**Monuments.** said by the appellant to be the actual measurement. The land lying along the south side of this fence was that for which a verdict was di-

rected for defendant. As to the land lying south and east of the fence constructed by defendant in 1920, beginning at the middle of the old channel of the river and running in a southwesterly direction to connect with a fence constructed by respondent as a part of his own inclosure, the verdict and judgment were for the plaintiff. The only difficulty connected with either the verdict or the judgment arises from the mention of the gas pipe as the north or east terminus of the defendant's line of fence where it joins the fence constructed by plaintiff, and extending easterly to the section line. This junction was in the middle of the old channel of the river, but is also stated in the verdict to have been at a gas pipe, the position of which with reference to the junction of the fences is uncertain. Whatever may be the fact in this respect the point of junction in the middle of the old channel of the river is the controlling call to which an inconsistent call must yield. The entire record, including the petition, verdict and judgment, places the right to recover upon the theory that the land recovered lies along the south side of defendant's fence which joins the plaintiff's fence at that point. The defendant, in his brief, does not seem to question the propriety of the verdict and judgment in this respect and we refer to the apparent discrepancy simply to indicate that we have observed and considered it.

V. There is no rule of law relating to land titles better established, than that adjacent proprietors may, for the purpose of settling their respective rights, agree upon the boundary between them, and that having acted upon such an agreement they are bound by its terms. [Blair v. Smith, 16 Mo. 273; Taylor v. Zepp, 14 Mo. 482; Turner v. Baker, 64 Mo. 218; Jacobs v. Moseley, 91 Mo. 457; Krider v. Milner, 99 Mo. 145; Brummell v. Harris, 148 Mo. 430; Barnes v. Allison, 166 Mo. 96; Martin v. Hays, 228 S. W. 741.] While this rule has sometimes been applied to cases in which a definite boundary has been fixed by the muniments of

*Agreed Line.*

title under which the parties claim, it is peculiarly applicable to those cases in which the boundary is uncertain, indefinite or unknown. It sometimes happens, as in this case, that the agreement is the only fact upon which the location of a division line can stand. It involves only an acre of land lying between the defendant's fence and the agreed boundary. This acre is specifically described in the petition as "beginning at the point last above described," (the middle of the old channel of the Nishnabotna River) "thence southwesterly ten rods; thence north by west ten rods; thence west by south ten rods to the bank of the old bed of the Nishnabotna River; the last above described line is off the true line, which divides the plaintiff's land from the defendant's land, at the beginning of said line it starts on the line and at a distance of ten rods from the beginning it is off the true line six feet; north ten rods further on said described line it is off the true line twenty-two feet; and where the said described line ends on the bank of said river said line is off the true line ten feet; that the amount of land belonging to plaintiff and taken by defendant is about one acre lying in a wedge shape, it may be more, no accurate measurements as to quantity having been made." It will be seen that this acre, more or less, lies between the point where the defendant's fence leaves the old channel of the Nishnabotna River and extends thirty rods southwesterly to the point where it again reaches it, that is to say, the acre is all included by the west thirty rods of defendant's fence which leaves the agreed line at its east end and comes back to it at its southwest end. No other land can be or is included in either the petition, verdict or judgment. Whether this judgment carries with it the title to the *fence* built by the defendant throughout its entire length need not now be considered. Whether or not it carries with it the intervening land which we have just described depends upon the force and effect of the agreement alleged. That there was such an agreement is not left in doubt by the evidence and, as we have already said, is practically

admitted, but the appellant says that, although it was agreed between the parties that the line should be where the last water ran in the old channel of the river, this agreement was never acted upon and can now, there-fore, be renounced at the pleasure of either party, and was so renounced by the act of defendant in construing his fence where he did. That it included the course of water flowing from the vicinity of the corner stone in the east line of Section 4, westward to the old main chan-nel, is shown by the fact, which the evidence tends strong-ly to prove, that seventeen years before the bringing of this suit the plaintiff constructed his fence north of the line between them as shown by the corner of the Govern-ment survey, and continued to maintain a hand ditch south of that fence in which water could and did at times run westerly into the main channel of the river. A bigger ditch was excavated in the main channel, and with this his fence which came down from the northwest was con-nected, so that this channel, which had been agreed upon as the line, became a part of the plaintiff's enclosure, and so continued up to the time of the trial. During that time it constituted the only barrier or dividing line be-tween the two properties. The plaintiff's fence from the east connected with it, as we have seen, at the point described in the verdict and judgment as the gas pipe, and from such point of connection this ditch continued to be the only boundary of his farm for a distance of several hundred feet until it reached his fence going north or northwest, thus completing the enclosure of his farm on that side. It performed perfectly the office of an enclosing line until the defendant in March, 1920, entered the enclosure, built his fence across, it, fencing off the acre which the plaintiff has, in this suit, recovered. The land had been openly and visibly in the possession of the plaintiff up to the old channel of the river. The defendant, by building this fence, in violation of the agreement, ousted the plaintiff from so much of his en-closure as lay south and east of it, and this suit had for its object the recovery of that parcel.

We see no material error in the record, and the judgment of the circuit court is therefore affirmed. SMALL, C., concurs.

PER CURIAM:—The foregoing opinion of BROWN, C., is hereby adopted as the opinion of the court. All of the judges concur.